STATE OF IOWA V. J. C. MOATS, Appellant.

**False Pretenses:** JURY QUESTION. Prosecutor an eccentric and weak minded man, testified that accused and another induced him to sign a deed of his farm by representing it to be an application for insurance and that he received no money therefor. The person who, with the accused, had procured the deed testified that the transaction was a sale of the farm, and that the prosecutor received a second mortgage on it, and a certain sum in cash, the proceeds of a loan made on the farm for the buyer, less the amount of the prior mortgage thereon which was paid off, a receipt for the money alleged to have been paid the prosecutor was produced, but he testified that accused had induced him to sign a white paper, and that he did not sign the receipt. The mortgage back to the prosecutor was not recorded and delivered until accused was suspected of the fraud, and, when the deed was signed by prosecutor, accused and the other person went there, ready to close the bargain, and with the papers prepared for signature. Accused retained all the papers and the other person negotiated the loan on the farm before its purchase. *Held* that a conviction for obtaining the deed by false pretenses was warranted.

EVIDENCE: *Rebuttal.* The defense to a prosecution for obtaining a deed by false pretenses was that the transaction was a sale of the lands, part of the consideration being the payment of money to prosecutor; and in corroboration thereof a receipt signed by prosecutor was produced. Prosecutor testified that he did not sign the receipt but signed a blank paper; and there was evidence that the receipt was written by accused. An accomplice testified for accused that he went to prosecutor's place alone and procured the receipt. *Held*, evidence that, on the day when the receipt was produced, accused was seen near prosecutor's house, was admissible in rebuttal of the accomplice's testimony, and to corroborate the evidence that the receipt was written by accused.

MENTAL CAPACITY OF PROSECUTOR. In a prosecution for obtaining a deed by false pretenses, evidence of prosecutor's mental con-

dition subsequent to signing it, and that his condition was the same prior thereto, and continued unchanged up to the time of the trial, was admissible, where prosecutor was a witness, to aid the jury in understanding his strength of mind when the deed was signed, and determining his credibility.

*Objections.* Evidence received without objection in a criminal case need not be stricken.

**Disqualification of Juror:** KNOWLEDGE. That a juror was biased on his *voir dire* and concealed that fact, is no ground for a new trial, unless it appears that his bias was unknown to accused.

*Appeal from Wright District Court.*—HON. B. P. BIRDSALL, Judge.

THURSDAY, APRIL 6, 1899.

THE defendant appeals from a judgment convicting him of the crime of cheating by false pretenses.—*Affirmed.*

*Ladd & Rogers* for appellant.

*Milton Remley,* Attorney General, and *W. H. Redmond* for the State.

LADD, J.—I.   The particular offense charged is that the defendant and one J. A. Lyons induced Ole Shelstrand to sign a deed conveying his eighty-acre farm to Anna C. Lyons, on the representation that the instrument was an application for insurance on his house.   Before this, Lyons had arranged with Tracy for a loan of one thousand two hundred dollars, and soon thereafter obtained it by executing a mortgage on the land.   Out of this a prior mortgage of five hundred and fifty dollars and taxes were paid. Lyons testified that he gave Shelstrand the balance, and took his receipt; that he bought the land for two thousand three hundred dollars, and the deed, and the two notes for one thousand one hundred and fifty dollars, and a mortgage on the land to Shelstrand, securing the remainder of the purchase price, were drawn and signed at the latter's house; that Moats was to be paid one hundred dollars out of certain accounts for finding a buyer, and to hold the papers

until the loan was negotiated. On the other hand, Shelstrand testified that, when at his home, Moats, who came with Lyons, requested him to sign an insurance paper, afterwards to be filled out, which he did; that he did not sell the land or sign a deed; that he never received any money from Lyons or Moats; and that, though he wrote his name on a piece of white paper at another time, when both were at his place, he did not sign the receipt. The evidence shows that Shelstrand lived alone, was very eccentric, not of strong mind, with little or no furniture in his house, in the habit of going to his work backward or sidewise, of standing or sitting in one position an unusually long time, and possessed of other peculiarities, but that he understood business fairly well, could work, was not of defective memory; and he does not appear to have been unreliable. No objection was made to his competency, and the record discloses no sufficient reason for doing so. He is somewhat corroborated by the undisputed facts of the transaction, tending strongly to show that advantage was taken of his weakness, rather than that he, through weakness, fabricated the story. True, evidence of some of his statements tends to his discredit. Only the controverted inquiry concerning the loan is inconsistent with his testimony, as the other statements may have been made after he had learned of the existence of a deed, and the conclusion might well be reached that it in fact was never made. That the defendant and Lyons attempted to take an unconscionable advantage of him is not doubted; and in view of the circumstances that they went out to buy the farm, carrying with them the deed, and everything ready to close the bargain, that Moats retained all the papers, that Lyons negotiated the loan before the purchase, that the mortgage back to Shelstrand was not recorded or delivered to him until the defendant was suspected of the fraud, and that Lyons, a stranger from Carroll county, paid out nothing on the land, we think the jury may well have accepted the testimony of Shelstrand, and found the defendant guilty as charged.

II. The trial court did not abuse its discretion in denying the application for a change of venue. The transaction occurred in one corner of the county, and the affidavits satisfactorily show that the prejudice, if any existed, was confined to that part. It does not appear to have been general, or such as to have precluded a fair and impartial trial. *State v. Foster,* 91 Iowa, 168; *State v. Read,* 49 Iowa, 85; *State v. Perigo,* 70 Iowa, 657.

III. The motion to strike out the evidence of certain witnesses, to the effect that Moats was seen near Shelstrand's house on the eleventh of August, with Lyons, was rightly overruled. No objection had been made to its introduction, and, the ruling might well rest on the ground that a party may not permit evidence to be received without objection, and thereafter, in the absence of any showing, have it stricken from the record. *State v. Marshall,* 105 Iowa, 44. But it tended to rebut the testimony of Lyons that he drove to the house alone in Moat's surrey on that day, and procured the receipt, and to support the evidence tending to show the receipt was written by Moats. Exception was also taken to evidence concerning Shelstrand's mental condition subsequent to the transaction. But the witnesses had stated that they had known him prior thereto, and such condition had continued unchanged up to the time of the trial. As he was a witness, this was calculated to aid the jury in better understanding his strength of mind at the time the deed was signed, and in determining what credit to give to his story. It was admissible.

IV. It is urged as a ground for a new trial that one of the jurors was biased, and entertained an unqualified opinion of defendant's guilt, which he concealed on the *voir dire* examination. It does not appear, however, that this, if true, was unknown to the defendant's attorneys, and for this reason we cannot inquire into the merits of the claim. *State v. Bassamus,* 108 Iowa, 10. —*Affirmed.*