C. B. GARDEN, Appellant, v. HARRY MOORE et al., Appellees.

**FORCIBLE ENTRY AND DETAINER:** Defenses—Parol Gift of
1 **Land—Peaceable Possession.** Evidence reviewed, and held sufficient to carry to the jury the question whether defendant was occupying the premises under an accepted parol gift, and therefore under such peaceable possession as would, under Sec. 4217, Code, 1897, bar an action of forcible entry and detainer.

**TRIAL:** Instructions—Submission to Counsel—Scope of Statute. Ad-
2 ditional instructions—those given to the jury after deliberation on the original instructions—need not be submitted to counsel prior to being read. (Sec. 3705-a, Code Sup., 1913.)

**TRIAL:** Verdict—Agreement to Disagree—Refusal to Receive—Ef-
3 fect. It is not error for the court to refuse to receive from the jury a so-called verdict of "an agreement to disagree." Such "agreement" is not a verdict. (Sec. 3722, Code, 1897.)

**TRIAL:** Conduct of Court—Coercing Jury. Coercion of the jury by
4 the court may not be predicated on the action of the court in ordering the jury to resume their deliberations, after a deliberation of some 5 hours only.

**NEW TRIAL:** Grounds—Matters Not In Themselves Error. In rul-
5 ing on a motion for a new trial, the court may and should consider the entire record, including many incidents not alone constituting error.

TRIAL: Verdict—Returned on Mere Chance—Competency of Affi-
6 davits—New Trial. Any scheme or agreement by which jurors
bind themselves in advance to return a verdict, irrespective of
the merits of the case, is fatal to the validity of the verdict so
returned, and *affidavits are competent to show such state of facts.*
So *held* where the jury, being in disagreement as to the meaning
of a certain instruction, agreed to submit the question to the court
through a request for additional instructions and that the verdict
should be returned solely on that instruction, regardless of any
view as to the merits.

*Appeal from Marion District Court.*—Lorin N. Hays, Judge.

SATURDAY, FEBRUARY 19, 1916.

ACTION of forcible entry and detainer for possession of
house and ground on which it stands, resulted in a verdict and
judgment for defendant. The plaintiff appeals.—*Reversed.*

*L. D. Teter,* for appellant.

*N. D. Shinn,* for appellees.

LADD, J.—I. The appellant is owner of 17 acres of land.
This had been worked as a stone quarry for 25 or 30 years,
and until about 5 years prior to the beginning of this action.
He acquired the property of a bank, in 1900,
1. FORCIBLE ENTRY and the bank of one Reagan. The employees
AND DETAINER:
defenses: parol who labored in the quarry lived in houses
gift of land:
peaceable situated on the premises. Among these was
possession.
James Moore, referred to hereafter as defend-
ant, who was first employed by Reagan 25 or 30 years pre-
vious to the trial, and continued to work in the quarry as
long as it was operated. His defense to the action was that
Reagan, about the time he began working there, gave him the
use of the premises, and that he has occupied the same since,
in pursuance thereof. As plaintiff regarded him as a tenant
at will, he caused to be served upon him the usual notices, and,
as he did not yield possession, this action was brought before
a justice of the peace and carried by appeal to the district
court. The defendant's testimony was that Reagan, who

owned the land when he began work, gave him the lumber and the right to build a house on said tract and live there as long as he wanted to, and that he lived in the house until it burned down, 9 or 10 years previous to the trial. Plaintiff testified that, when he purchased the premises, said defendant requested permission to continue to occupy the house; that 7 to 9 years before, the house he lived in had burned, and that said defendant asked permission to move a small frame building on instead; that he gave such permission and that the neighbors, including plaintiff, contributed money and materials for the construction of the present house, in which said defendant had lived since, though only about a third of the time during the last 4 years. Defendant's son and wife have lived with him for several years.

It is evident from this recital of the record that the evidence was such that the jury might have found a gift for life of the use of the ground on which the house stands, and that this was accepted and acted upon by the defendant in entering into and continuing in possession. See *Sires v. Melvin,* 135 Iowa 460; Section 4217, Code.

II. The cause was submitted to the jury at 11 o'clock in the morning and, after deliberating until 4 o'clock in the afternoon, they returned into court, with the statement that "the jury agreed to disagree", signed by their foreman. The court refused to receive this, and directed the jury to retire for further deliberation. At 7:30 o'clock of the same day, they were brought in again, and, in response to inquiries from the court, stated that they were unable to agree. The court observed: "Lots of contrary fellows on that jury, are there not?" Juror: "Nine of them." After a running conversation between the court and jurors, in the course of which the court indicated that he could give them no help in reaching any conclusion on the evidence, but might enlighten them as to the law, they were directed to retire, the bailiff being instructed that, if they

2. TRIAL: instructions: submission to counsel: scope of statute.

did not agree in the course of a half hour, he should bring them back. Upon their return, the court inquired if a verdict had been agreed upon. Juror: "No, sir, but we are whittling", and indicated that there was a point on which the jury would like to have more light. The court had told the jury in the tenth instruction that, if Reagan had made a gift to defendant of the right to use and occupy premises during his life, and said defendant had occupied the premises, in pursuance of said gift, a person purchasing the premises from Reagan or his grantees, while defendant was in such possession, "would be chargeable with notice of whatever rights the defendant may have had under such lease or right from the said Reagan". The jurors requested the court to define what was meant by the word "chargeable", as used in this instruction. Though counsel for plaintiff consented to having the instruction given orally, the court prepared the same in writing and read it to the jury, without having first submitted it to counsel, in words following:

"In answer to the inquiry of the jury as to the court's meaning in instruction No. 10 of the term 'chargeable with notice of whatever right the defendant may have had under such lease or right from said Reagan,' the court submits the following: Where a person is in possession of property, the title to which is in another, any person dealing with the owner for such land while the possession thereof is in another, must take notice of whatever right the person in possession may have to or in said land, and it is his duty to investigate and find out what rights the possessor may have; and if he fails to do so, he takes such land or title subject to whatever rights the possessor thereof may have therein."

The jury retired, and, after being out 15 minutes, returned with a verdict for defendant.

(a) Appellant first insists that the court erred in giving the additional instruction without submitting it to counsel. It was authorized by Section 3720 of the Code. *Burton v. Neill,* 140 Iowa 141. Section 3705-a, Code Sup., 1913,

requiring, among other things, that instructions be submitted to counsel on either side before reading to the jury, has reference to the charge of the court given on submission of the case to the jury originally, and not to additional instructions, demanded by the exigencies of the situation after the jury has been deliberating on the case.

(b) But it is said that the additional instruction assumed facts in issue and, in any event, that it was inconsistent with the tenth instruction, previously given. A casual reading of the two instructions sufficiently refutes these criticisms.

(c) Counsel next argue that the court erred in refusing to receive the purported verdict agreeing to disagree. This was not a verdict, but an agreement not to agree to nor return a verdict. To constitute a verdict, the decision must be unanimous in favor of the one party or the other, and such unanimity is assured by according either party right to have the jury polled, upon the return of the verdict. Section 3723, Code; *Jessup v. Chicago & N. W. Railway*, 82 Iowa 243; *Smith v. Paul*, (N. C.) 45 S. E. 348. If there is any disagreement, the jury must be sent out again, precisely as was done in this case, that they may continue their deliberations in the effort to agree upon a verdict responsive to the issues presented. The court rightly ruled that the agreement to disagree was not a verdict, and did not err in requiring the jurors to continue their deliberations.

3. TRIAL: verdict: agreement to disagree: refusal to receive: effect.

(d) Nor do we think that what occurred tended to coerce the jury into an agreement. When first brought before the court, they had been out but five hours, and ordering them to retire for further deliberation indicated no more than the court's conclusion that they had not adequately considered the cause. In any event, this course was expressly authorized by Section 3722 of the Code. Moreover, the very purpose of trying a case is to reach a decision on the

4. TRIAL: conduct of court: coercing jury.

issues presented, as the jury knows as well as the court, and within reasonable limits as to time, the jury has no right to infer, nor will this court assume that they may have inferred, from merely directing them to continue in deliberation over the case submitted for their decision, that they are to be kept together indefinitely, or until they agree, regardless of the time required. Nothing appears in *Rodgers v. Farmers National Bank*, 117 Iowa 511, to the contrary, nor was anything said therein warranting the annotation under Section 3720 of the Code, that telling the jury, without explanation, that a verdict that it "agrees to disagree" could not be returned, exacted the granting of a new trial.

5. NEW TRIAL: grounds: matters not in themselves error.

Of course, the trial court, in ruling on a motion for new trial may and should consider the entire record, including many incidents not alone constituting error, and this was the substance of what was there said. Often, jurors, after consulting for some time, divide on a single point, to the exclusion of all others, or conclude that there is no more to be said on the issues, or that further discussion is useless, or become discouraged in some other respect. Bringing them before the court in these circumstances and inquiring sympathetically of their difficulties and manifesting willingness to aid them if possible, as was done in this case, is quite likely to break the spell and enable them to return to their deliberations unhampered by pride of opinion, and with added zeal to reach an agreement as to the very right in the controversy. There was no semblance of coercion in what was done.

III. One of the grounds of the motion for new trial was that the verdict was not the expression of the judgment of 9 of the jurors on the merits, and this was based on the affidavit of said 9 jurors that, "just prior to the

6. TRIAL: verdict: returned on mere chance: competency of affidavits: new trial.

jury's calling for special or additional instructions, the said jurors were divided, 9 for the plaintiff and 3 for the defendants; that said 9 jurors agreed with the other 3 jurors that,

inasmuch as we did not all agree on a proposition of law, that we would submit the matter to the court and ask further instructions on that proposition and abide by the instructions on this single proposition, and return our verdict on that single instruction; that, after the court gave the special or additional instruction, the said 3 jurors contended that the said special or additional instruction was in their favor, and demanded that we do as we had agreed with them to do; that, in conformity with the said agreement so made, the 9 members of said jury, for the purpose only of doing as they had agreed, then voted with the other 3 and returned their verdict for the defendant, based on said agreement; that, had it not been for the fact of said agreement so made with said 3 jurors, the undersigned jurors would not have returned our verdict for said defendants''.

Appellee argues that this affidavit might not have been received because of matters inhering in the verdict and, in any event, the only disagreement was with respect to the meaning of the tenth instruction. But the affidavit refutes this thought by saying that the agreement was made in advance to abide the outcome of asking an additional instruction, regardless of any view as to the merits. Nor do we think the matters covered by the affidavit such as should be excluded from proof in this manner, because of inhering in the verdict. It will be observed that the agreement cut off all deliberation on the evidence by the jury or any member thereof, and bound in advance all to agree, regardless of their individual convictions as to the merits. Affidavits of jurors to show that ''the verdict was determined by aggregation and average or by lot or game of chance or artifice or improper manner'' were held, on great consideration, in *Wright v. Illinois & Miss. Tel. Co.,* 20 Iowa 195, to be admissible to show such misconduct, and that decision has been followed since in numerous decisions denouncing the quotient verdict as misconduct exacting a new trial. In *Merseve v. Shine,* 37 Iowa 253, the verdict was determined by writing on 12 slips of paper the name of

plaintiff, on 12 others, the name of defendant, and having a juror blindfolded draw 12 of these slips, the jury returning a verdict for the party whose name was on the majority of the slips so drawn, in pursuance of a previous agreement. In *Ruble v. McDonald*, 7 Iowa 90, the verdict was arrived at by drawing lots or balloting, and a portion of the jury agreed to be bound in advance. The agreement in this case was in the nature of a wager as to which side, the 9 jurors or the 3 entertained the correct opinion as to the meaning of the tenth instruction, and none seem to have been deterred by their oath to decide according to the evidence and instructions from staking the rights of the litigants on their respective interpretations of what the court had said. Such an agreement forestalls inquiry and prevents the exercise of the independent and unbiased judgment of the jurors and, therefore, vitiates the verdict when returned. On this ground, a new trial should have been awarded.—*Reversed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.