MARY HANSON, Appellant, v. CITY OF ANAMOSA, Appellee.

**MUNICIPAL CORPORATIONS:** Defects or Obstructions in Streets
1 —Knowledge of Condition—Negligence Per Se. A pedestrian is not guilty of negligence *per se* by passing over a known defect in a street, unless he knew or ought to have known that it was imprudent and dangerous to do so. Evidence reviewed, and held to present a jury question (a) whether plaintiff knew or ought to have known of a particular defect in the street, (b) whether she knew or ought to have known that it was imprudent and dangerous to attempt to pass over such defect, and (c) whether, under all the circumstances, she exercised reasonable care.

MUNICIPAL CORPORATIONS: Defects or Obstructions in Streets
2 —Assumption of Safe Condition—Knowledge to Contrary—Habitual Use of Street. A pedestrian, in the absence of knowledge to the contrary, has a right to assume that a street is in a reasonably safe condition, and, if not, that the city will, within a reasonable time, put it in safe condition. It follows that the habitual use of a street to the extent of once a month for 16 months does not *conclusively* establish that the pedestrian knew or ought to have known of a defective condition at the point of accident.

APPEAL AND ERROR: Harmless Error—Avoidable Error. Error
3 may not be predicated on an erroneous ruling, the effect of which may be easily avoided by the complaining party.

TRIAL: Reception of Evidence—Objections—Timeliness. One may
4 not withhold his objection to a question and thereby speculate as to the nature of the answer, allowing it to stand if favorable, moving to strike if unfavorable.

MUNICIPAL CORPORATIONS: Defects or Obstructions in Streets—
5 Negligence—Condition of Streets Generally. Though due care may have been exercised in the maintenance of all streets throughout the city except the particular walk and approach in controversy, yet such fact is wholly immaterial on the issue of the city's liability for an injury occurring at the particular point in controversy.

TRIAL: Instructions—Objections and Exceptions—Failure to Make.
6 Failure to interpose an objection to an instruction before the same is read to the jury works a waiver of the right to make such objection. (Sec. 3705-a, Code Supp., 1913.)

MUNICIPAL CORPORATIONS: Defects or Obstructions in Streets
7 —Instructions—"Dangerous" and "Unsafe." The terms "dangerous" and "unsafe," as applied to the condition of a street, and the responsibility of the city therefor are held to be synonymous, and may be used interchangeably in instructions defining such responsibility.

APPEAL AND ERROR: Harmless Error — Incorrect Instruction
8 Cured by Record. An erroneous instruction may be rendered harmless by the state of the record. So held where the court instructed the jury that they must determine *from plaintiff's evidence* whether she was guilty of contributory negligence, but the error was rendered harmless because plaintiff alone testified to what occurred at the time of the injury.

MUNICIPAL CORPORATIONS: Defects or Obstructions in Streets
9 —Degree of Care—Instructions. A municipality must exercise

that degree of care in undertaking to maintain its streets in a reasonably safe condition which would be exercised by an ordinarily cautious and diligent person under like obligation and in like circumstances. Instructions held to be in harmony with this rule.

**MUNICIPAL CORPORATIONS: Defects or Obstructions in Streets 10 —Want of Repairs—Negligence.** The act of the city in leaving a walk *out of repair* is not necessarily actionable negligence. This depends (a) on the location and surroundings, (b) on whether the defect was so plainly observable at all times as to be readily seen, and (c) on whether, when the defect was seen, the walk could be used without danger. It follows that the proximity of lights is a proper matter for the consideration of the jury.

**TRIAL: Instructions — Form, Requisites, and Sufficiency — Undue 11 Emphasis.** An instruction is not subject to the vice of being partial and of unduly emphasizing one theory simply because the different theories are presented in different paragraphs.

**NEGLIGENCE: Contributory Negligence—Knowledge of Conditions. 12** Whether an injured party was guilty of contributory negligence in passing over a defective sidewalk depends, *inter alia,* (a) on the knowledge of the party as to the conditions of the locality, (b) on the length of time that the walk had been in such condition, and (c) on the degree of watchfulness exercised by the party to avoid danger.

**APPEAL AND ERROR: Harmless Error—Measure of Damages. 13** An instruction on the measure of damages, applicable to the evidence and correct as far as it goes, but erroneous because of omission of any mention of other recoverable elements of damages, is rendered harmless error when the jury denied plaintiff any recovery.

*Appeal from Jones District Court.*—M. P. SMITH, Judge.

THURSDAY, JUNE 29, 1916.

ACTION for damages alleged to have been caused by a defective sidewalk resulted in a verdict for defendant and judgment thereon. The plaintiff appeals.—*Affirmed.*

*L. A. Jensen* and *Remley & Remley,* for appellant.

*C. J. Cash, B. E. Rhinehart* and *C. B. Paul,* for appellee.

LADD, J.—I. The plaintiff, while walking along the north side of Main Street in Anamosa, after crossing Garna-

villo Street fell and was seriously injured. Main Street is paved with brick, and this pavement extends north somewhat beyond the Main Street line, and is used as a crossing in connecting the cement walks on the north side of Main Street east and west from Garnavillo Street. The curbing is a foot high, rising about 6 inches or more above the pavement, and is 6 inches thick and is laid from Main Street around to the north in Garnavillo Street next to the end of the sidewalk. The end of the plank approach was beveled so as to fit against it, and the other end was held by a stone set in the pavement. It was made of boards about 6 inches wide and 2 inches thick. The sidewalk was even with the curbing and level when made, as was the end of the approach, but the south side of the latter had settled so that next to the curbing it was, according to one witness, from 2½ to 3 inches lower than the curbing. This approach extended 3 feet and 8 inches west from the curbing and was 5 feet wide. A plank had been split, but was held in place by a brick. There was an elm tree about 10 inches east of the curbing and about 2 feet north of the north side of the approach. The cement walk had been laid around this tree, which was about 2 feet in diameter at the surface of the ground. The walk, though on a level with the curbing when constructed, had been raised by the growth of the roots of the tree, at the time plaintiff was injured, so that the top of the sidewalk east of the approach and at the north side of it was 4 inches above the curbing, 3¼ inches above at the center and 2 inches at the south side, and the walk sloped toward the southeast. There were two breaks in the cement, the portion between these being lower than on either side. An arc light was suspended at the center of the street intersection, and on the northeast corner was a hotel, and on the corner to the west, a store. The plaintiff came out of the store and walked across Garnavillo Street in going to the place where her husband was employed, in order to accompany him home. She testified:

"I caught my toe on the raised place where that approach

was. I mean I caught on the sidewalk that stuck up above the approach. I couldn't say which foot it was. Just as I came up that approach and stumbled along and fell. I am sure I stubbed my right toe there because I supposed it was even like other places. I know I stubbed my toe because I started to stumble right there. There wasn't anything else there to make me stumble I know. Just as I stepped off the approach as I was going to enter the sidewalk, I supposed that it was even with the approach . . . I did not have any knowledge of any elevation at that corner. I fell about six or seven feet from the approach. I ran along trying to balance myself, and finally fell on my left side."

This occurred January 14, 1914, at about 8 o'clock in the evening. There was evidence tending to show that the condition of the walk might have been seen at a considerable distance, and the city admitted having had full knowledge of its condition long enough to charge it with notice.

Several grounds of negligence were alleged, but the two submitted were: (1) Whether the city was negligent in permitting the sidewalk and approach to remain in the condition described; and (2) whether the sidewalk was out of repair. The evidence was ample to carry these issues to the jury. Whether plaintiff contributed to her injury by her own negligence evidently was the main issue. Conditions were not such that it can be said that plaintiff, if she knew these, necessarily was negligent in traveling that way; for, notwithstanding the defects, she might have concluded that, in the exercise of ordinary care, she could pass safely. The rule is well established that mere knowledge of the defective condition of a public street will not, as a matter of law, render a party guilty of negligence in using the same; but to accomplish this, it must also appear that he knew, or, as an ordinarily cautious person, ought to have known, that it was imprudent and dangerous to attempt its use. *Reynolds v. City of Cen-*

1. MUNICIPAL CORPORATIONS: defects or obstructions in streets: knowledge of condition: negligence *per se.*

*terville,* 151 Iowa 19; *Gibson v. City of Dennison,* 153 Iowa
320. If, then, the city was found to have been negligent in
allowing the approach and walk to be and continue in the
condition described, the jury must have proceeded to pass on
the issue as to plaintiff's contributory negligence, and its
decision with reference thereto depended on: (1) Whether
she knew, or, in the exercise of ordinary care, should have
known, of the condition of the walk; and (2) if she knew, or
ought to have known, whether, in the exercise of ordinary
prudence, she might have concluded that by exercising ordi-
nary care she could pass over safely; and (3) whether, in
traveling that way, with or without knowledge, actual or
imputed, she exercised that degree of care that an ordinarily
prudent person would under like circumstances. Plaintiff
first testified that she did not have knowledge of any eleva-
tion of the walk at the corner; that she supposed it was even
with the approach. On the other hand, she admitted having
gone that way once a month during the 16 months she had
lived in Anamosa, and that conditions there were observable
from across the street "if one takes particular notice," and
testified:

"Q. When you were walking over from the Warren's
store and over towards Gildner's store, going east, just state
to the jury whether you were looking ahead or whether look-
ing down or up or which way, if you remember. A. I don't
just remember which way I was looking; I usually look
straight ahead as I walk along."

She also testified that the sidewalk looked five inches
higher than the approach, but that she could not say when
she noticed this.

"Q. Did it look that high that night? A. I couldn't tell
just how high it looked. I stepped my foot—it was raised
higher than the approach. Q. You knew it was higher, but
you didn't know how high? Is that it? A. I couldn't tell
just how high."

This testimony neither shows that she was not looking

ahead nor that she observed, when nearing the approach, that the sidewalk was above it, though, in attempting to step on it, she ascertained that it was higher than the approach.

A pedestrian making use of city walks is not bound to constitute himself an inspector of walks. He is not required at his peril to observe defects in the street and their location.

2. MUNICIPAL CORPORATIONS: defects or obstructions in streets: assumption of safe condition: knowledge to contrary: habitual use of street.

He has the right to assume, in the absence of knowledge to the contrary, that these are in a reasonably safe condition, and if not, that the city will, within a reasonable time, put them in such condition, and can be charged with such knowledge of the condition of the streets only when, acting as an ordinarily intelligent and observing man, in the exercise of ordinary caution, he would be likely to observe this in passing over the streets and remember it at the time in question. When out for a walk merely, or on some errand or on the way to business, people usually are more or less absorbed in conversation or thought, or their attention may be diverted in some other way. Localities are often overlooked or passed unnoticed, and it cannot be said that the circumstance that plaintiff had passed that way at least once a month for some time previous conclusively established that she knew, or as an ordinarily cautious person ought to have known, the condition of the approach and walk at the place in controversy. That issue was for the jury, as were also the issues as to whether, with such knowledge, she was justified in thinking she might pass over in safety, and whether, in so doing, she exercised ordinary care for her own protection.

II. The night watchman of the city testified that it was his duty to observe the arc lights and whether they were burning or not; that he kept a record of any that were out,

3. APPEAL AND ERROR: harmless error: avoidable error.

and immediately reported the fact to the electric light and power company and afterwards to the city council. He was asked whether the arc light at the intersection of

the streets mentioned went out during the night of January 14, 1914. An objection as incompetent and that the writing is the best evidence was overruled. Whether there was an answer does not appear. After eliciting the statement that witness had no recollection outside the record made by him, counsel moved that the answer said to have been elicited be stricken. This motion was overruled. Assuming that the answer was responsive, there was no prejudicial error in the ruling, for the record itself was admissible. *Edwards v. City of Cedar Rapids,* 138 Iowa 421; *State v. Brady,* 100 Iowa 191. All decided in *State Bank v. Brewer,* 100 Iowa 576, was that a motion to strike out the evidence is essential in order to challenge its admissibility when it is apparently rightly received, but is subsequently shown really to have been inadmissible.

III. The street commissioner, after testifying to his familiarity with the corner and how lighted, was asked:

"How is this corner lighted, taking into consideration the street lights and private lights as compared with the other lights of the city? A. One of the best light corners in the city.

4. TRIAL: reception of evidence: objections: timeliness.

"Mr. James E. Remley: We move to strike out the answer for the reason that it is the conclusion of the witness, and he has not shown himself competent, and for the further reason as he is drawing comparison as to other corners in town, and it is immaterial.

"The Court: The motion is overruled. (Plaintiff excepts.)"

Had timely objection been interposed, it must have been sustained. There was no evidence as to how other portions of the city were lighted, and, of course, such evidence would have been inadmissible. In any event, the comparison had no bearing on the issues being tried. But, as frequently held, a party may not wait for an answer, and, when it proves to be unfavorable, ask to have it excluded. The objection should be to the question, or, if the witness is too quick to permit of this, the record should disclose this fact, in order to render

the motion of any avail. *Blackmore v. Fairbanks, Morse & Co.*, 79 Iowa 282; *Leipird v. Stotler*, 97 Iowa 169; *State v. Marshall*, 105 Iowa 38; *State v. Moats*, 108 Iowa 13, 15; *Murphy v. McCarthy*, 108 Iowa 38; *Walrod v. Webster County*, 110 Iowa 349; *Tuttle v. Wood*, 115 Iowa 507; *Stanley v. Core*, 119 Iowa 417; *Oxford Junction Sav. Bank v. Cook*, 134 Iowa 185; *Aughey v. Windrem*, 137 Iowa 315.

Though a litigant may not insist on the exclusion on motion of evidence introduced without objection, it is within the court's discretion to strike out improper evidence on motion of either party, and possibly, in a proper case, on its own motion. From the fact that the evidence was objectionable, it is to be inferred that the ruling on the motion was based on the failure to interpose timely objection. So grounded, the ruling will not be denounced as erroneous.

IV. Capt. Loomis, after fully describing the condition of the approach and walk, was asked "whether there was any other crossing in Anamosa where the sidewalk is allowed to be above the curbing 4 inches to the north, 2 inches to the south, and 3¼ inches in the center." Objection, as incompetent and immaterial and irrelevant, was sustained. That a city may be faultless in other respects does not exonerate it of the wrong charged, and, though due care may have been exercised in the maintenance of all streets except the approach and walk in controversy, this would in no manner relieve defendant of its obligation to have exercised ordinary care in maintaining such approach and walk in a reasonably safe condition. The evidence sought to be elicited would have had no bearing on the issues, and was rightly excluded.

5. MUNICIPAL CORPORATIONS: defects or obstructions in streets: negligence: condition of streets generally.

V. The instructions are criticized as a whole as well as in detail, and in so doing, counsel appear to have overlooked Section 3705-a, Code Supp., 1913, forbidding the consideration of any objections or exceptions to instructions not made in writing thereto and not specifically pointing out the exact

grounds thereof.before the instructions are read to the jury, unless upon showing, in a motion for new trial, that an error in such instructions was not discovered, at the time of the trial, by the party claiming the error. Exceptions not founded on objections so taken and evidenced will not be considered by this court. *State v. Nott,* 1.68 Iowa 617; *State v. Stanton,* 172 Iowa 477; *State v. Fisher,* 172 Iowa 462; *American Fruit Product Co. v. Davenport Pickling Works,* 172 Iowa 683; *Garden v. Moore,* 174 Iowa 376; *State v. Cooper,* 169 Iowa 571.

6. TRIAL: instructions: objections and exceptions: failure to make.

Only the specific objections interposed to instructions will be considered. In the first instruction, the court told the jury that, in order to find for the plaintiff, it must appear that the defect in the walk which caused the injury "left the sidewalk and approach in a dangerous condition." It is argued that, to be "dangerous," the approach and walk must have been more in want of repair than merely to have been unsafe, and exacts more of the plaintiff than the law required. If the ordinary definitions are to prevail, the words "unsafe" and "dangerous," as applied to a street, are synonymous. If an approach or walk is unsafe for a pedestrian to pass over, it is dangerous, and if dangerous, it is unsafe. "Dangerous" is defined in Webster's Dictionary as: "Attended or beset with dangers; full of risks, causing danger; likely to harm; perilous; hazardous; unsafe;" while "safe" is defined as: "Free from harm, injury, risk; untouched or unthreatened by danger or injury." The Century Dictionary defines "dangerous" as: "Involving or exposing to danger . . . unsafe; full of risk; . . . liable to inflict injury or harm." And "safe" is defined by the same authority as: "Free from risk or danger; secure; not dangerous or liable to cause injury or harm; not likely to expose to danger . . . no longer dangerous; placed beyond the power of doing harm." See *West v. Ward,* 77

7. MUNICIPAL CORPORATIONS: defects or obstructions in streets: instructions: "dangerous" and "unsafe."

Iowa 323. Of course, "unsafe" is the opposite of "safe," and anything that is unsafe would seem to be dangerous, and, as applied to any portion of a street, a defect which would be unsafe to pedestrians traveling over it would be dangerous, and vice versa. As said in *Coates v. Town of ,Canaan,* 51 Vermont 131, 137:

"The word 'dangerous' is the opposite of the word 'safe.' When a given place in a highway ceases to be safe it becomes dangerous."

There was no error in the use of the word "dangerous" in the instruction.

VII. The jury was also told in the first instruction that: "She must also show, or it must appear by her evidence, that she did not contribute to the injury by negligence on her part." In the seventh instruction, the jury was told that: "The burden of proof is on the plaintiff to disclose by her evidence that she was, at the time of the injury, in the exercise of such ordinary care as herein defined." The criticism is that these instructions limited the jury to the consideration of plaintiff's testimony, whereas they might properly take into consideration this in connection with all the evidence adduced on the trial bearing thereon. The criticism is sound. Abstractly considered, the portions of instructions quoted are erroneous. But, as applied to the facts of this case, they stated the law as favorably to the plaintiff as she could expect. She alone testified to what occurred. There was no controversy over the condition of the approach and walk. She alone testified to facts bearing on her knowledge of their condition, and the court, in the seventh instruction, directed the jury to take into consideration "her knowledge of the condition of the locality" and "the amount of watchfulness she exercised to avoid danger if any there existing." In view of the state of the record, there was no error in the respect contended in these instructions.

8. APPEAL AND ERROR: harmless error: incorrect instruction cured by record.

VIII.  The second instruction read:

"You are instructed that the defendant is bound to use reasonable care and precaution to keep and maintain its streets and sidewalks in good and sufficient repair to render them reasonably safe for all persons passing on or over the same;" and the failure so to do would amount to negligence.

9. MUNICIPAL CORPORATIONS: defects or obstructions in streets: degree of care: instructions.

This is said to lower "the degree of care on the part of the defendant," it being argued that defendant was bound to use sufficient care to keep its sidewalks in such repair as to render them reasonably safe.  The position is untenable. A municipality is under obligation to maintain the streets in a reasonably safe condition, but is not absolutely required to accomplish this in order to avoid liability.  All exacted is that it exercise that degree of care in undertaking to so maintain them as would be exercised by an ordinarily cautious and diligent person under like obligation and in like circumstances.  This is the measure of its duty, and liability attaches only when it falls short of this in performance thereof.  *Hall v. Incorporated Town of Manson,* 90 Iowa 585; *Crandall v. City of Dubuque,* 136 Iowa 663; *Witt v. Town of Latimer,* 139 Iowa 273; *Harvey v. City of Clarinda,* 111 Iowa 528.

IX.  Complaint of the fourth instruction is that it authorized the jury, in passing on the issue as to defendant's negligence, to take into consideration the location and surroundings, "the proximity of lights, the fact that it was at a street intersection where continuity of the cross walk and sidewalk are not to be reasonably expected by the pedestrian.  Cities and towns are not required to

10. MUNICIPAL CORPORATIONS: defects or obstructions in streets: want of repairs: negligence.

keep perfectly smooth and level sidewalks, nor are they required to construct walks so that they are uniform at street crossings and intersections; but they are required to use reasonable care to keep the sidewalks and crossings reasonably

safe, and, if you find that the walk and approach in question were reasonably safe under the surroundings in this case, then you would be justified in finding that defendant had exercised reasonable care herein, and your verdict should be for the defendant."

It is argued that the walk was shown to be out of repair, and that the existence of lights could not obviate this. A walk out of repair may not be unsafe to travel over, and leaving it in that condition may not constitute actionable negligence. Whether permitting this approach and walk to continue as it was without repair constituted negligence necessarily depended on the location and surroundings, whether its condition was so plainly observable at all times as to be readily seen by pedestrians passing over it, and, when it was seen, whether the approach and walk could be made use of without danger to the traveler. See *Patterson v. City of Council Bluffs*, 91 Iowa 732. There was no error in directing the jury to consider the proximity of the lights, nor can it be said that the instruction is not properly balanced. In the second instruction, the court had advised the

11. TRIAL: in-structions: form, requi-sites and suffi-ciency: undue emphasis.

jury what was essential to recovery by plaintiff, and in the fifth paragraph of the charge, had more specifically pointed out the duty of the city with reference to its streets, and again stated that, on finding as recited, it would be liable. The fourth instruction purports to present some features of the defendant's theory of the case. While the recital or emphasis of facts favorable to one party and omission of all reference to those favorable to the other is to be condemned (*Whitman v. Chicago, Great Western R. Co.*, 171 Iowa 277), it is not necessary that all the facts alluded to be marshaled in the same paragraph of the charge. Attention of the jury may be directed to the theories of the respective parties and matters tending to sustain them, preferably in separate paragraphs of the charge, and that was the course

pursued in the instructions in this case. The criticism is unfounded. The trouble with the objection to the sixth instruction is that it assumes the instruction to be otherwise than it plainly reads.

The exception to the seventh instruction, other than that heretofore considered, was that the jury, in determining whether plaintiff exercised ordinary care in going over the approach and walk, was authorized "to consider her knowledge of the condition of the locality, the length of time it had been in the condition it was, the amount of watchfulness she exercised to avoid danger, if any there existing." Though the cement walk had been constructed around the tree seven years before, the sidewalk must have been raised with the growth of the tree, and how long the walk had been in substantially the same condition as at the time in question does not appear. This was a matter bearing on whether she, as an ordinarily prudent person, ought to have known of the existing condition of the walk, and was proper for consideration in ascertaining whether she was careful in what she did.

12. NEGLIGENCE: contributory negligence: knowledge of conditions.

Objections to other instructions are hypercritical, and require no attention, save that to the fifteenth. That dealt with the measure of damages; but, while directing the jury to consider her condition since being injured, her mental anguish, pain and suffering and reasonable inferences from the record, omitted entirely loss of time, medical attendance, and other expenses incurred, recovery for which was authorized by Section 3477-a, Code Supp., 1913. As the elements of damages the jury was directed to consider were fully proven, that body must have based its verdict on a finding that defendant was not negligent or that plaintiff was, and therefore the omission of all reference to other elements of damages proper for consideration in the instruction was without prejudice. *Lush v. Incorporated Town of Parkersburg,*

13. APPEAL AND ERROR: harmless error: measure of damages.

127 Iowa 701. The instructions asked and refused, in so far as accurate statements of law, are included in those given, save as to measure of damages, and the refusal to give that was, as seen, without prejudice.

The judgment is—*Affirmed.*

EVANS, C. J., GAYNOR and SALINGER, JJ., concur.