[S. F. No. 18772. In Bank. Aug. 21, 1953.]

CARRIE C. PETERS, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO, Defendant and Appellant; JEANNE DUQUE et al., Respondents.

Fitzgerald Ames, Sr., and Guernsey Carson for Plaintiff and Appellant.

Dion R. Holm, City Attorney, and Lawrence S. Mana, Deputy City Attorney, for Defendant and Appellant.

Daniel C. Miller, Anna White Garlund, Keith, Creede, & Sedgwick and Frank Creede for Respondents.

GIBSON, C. J.—Plaintiff fell and was seriously injured while walking on a sidewalk in San Francisco in front of an apartment house belonging to defendants Duque. She sued for damages, joining the city and the Duques and alleging that her injuries were proximately caused by the negligence of all defendants. The jury found for the plaintiff against the city but against the plaintiff with regard to the liability of the Duques. Judgment was entered on the verdict, and both plaintiff and the city have appealed.

The sidewalk in the area where the accident occurred was 15 feet wide and was already in existence when the apartment house was erected in 1919 by one of the Duques' predecessors in title. The building contained a garage having doors which opened directly onto the sidewalk. The garage floor was lower than the adjoining sidewalk, and, at or about the time the building was erected, a ramp or slope had been made in the walk leading down to the level of the garage floor in order to

provide access for automobiles. The depression created by the alteration was wide enough to accommodate a car, and it reached a depth of 11 inches below the normal level of the sidewalk at the building line. The slope extended 6 feet, 7 inches out from the building to a point approximately half-way across the sidewalk. The Duques acquired the property in 1940, and at the time the accident occurred the driveway was in substantially the same condition as when it was constructed. Plaintiff, an elderly woman, was walking along the sidewalk alone and did not see the depression caused by the driveway. She stepped into it unexpectedly at a point approximately 6 feet away from the building line and fell to the ground, breaking her hip.

### PLAINTIFF'S APPEAL

Plaintiff's principal contention is that the court erred in instructing the jury with respect to the liability of the Duques for the condition of the sidewalk where plaintiff fell. The jury was told that "No affirmative duty rested on said defendants Duque as the owners of property abutting said sidewalk or otherwise to keep the sidewalk in safe condition, but our law does provide that when the owner of property abutting a sidewalk creates, by some positive action, a condition which is likely to cause harm to persons lawfully using the sidewalk, and a person so using the walk is injured as a proximate result of such condition, the property owner is then liable for that injury, in the absence, of course, of contributory negligence."

The instruction does not contain an accurate statement of the law with respect to the liability of a property owner for the condition of the sidewalk adjoining his property. ▮ The rule is that an abutting landowner may be held liable for the dangerous condition of portions of the public sidewalk which have been altered or constructed for the benefit of his property and which serve a use independent of and apart from the ordinary and accustomed use for which sidewalks are designed. (*Sexton* v. *Brooks*, 39 Cal.2d 153, 157 [245 P.2d 496].) ▮ The instruction erroneously implies that only the property owner who himself creates the dangerous condition in the sidewalk may be held liable therefor. ▮ The duty to maintain portions of a sidewalk which have been altered for the benefit of the property runs with the land, and a property owner cannot avoid liability on the ground that the condition was created by or at the request of his predecessors in title. (*Sexton* v. *Brooks, supra,* 39 Cal.2d at p. 157-158.)

There was ample evidence from which it could be inferred that the sidewalk had been altered by one of Duques' predecessors in title for the benefit of the property to serve a use independent of and apart from the ordinary accustomed use for which sidewalks are designed, and it appears that the jury might have returned the verdict in favor of the Duques under the erroneous belief that they were automatically relieved from liability because of the fact that they had nothing to do with creating the condition in question.

The Duques nevertheless argue that the judgment in their favor should be affirmed because the evidence assertedly establishes as a matter of law that plaintiff was guilty of contributory negligence. It appears from photographs which were placed in evidence that the depression in the sidewalk extended several feet farther out from the building line than did other driveways in the vicinity. Plaintiff testified that she was walking along the approximate center of the sidewalk in a leisurely manner, somewhat closer to the building line than to the curb. She had never before been on that side of the street. It was shortly before noon, the weather was clear, and the sun was shining directly overhead. Plaintiff stated that she looked "straight ahead" as she walked and did not look down at her feet. She said that she noticed the deep part of the depression near the garage door but that she did not see the portion of the driveway which lay in her line of travel and that she "did not dream that it came out that far. . . ." When asked if she saw the particular place in the driveway where she fell, plaintiff said, "You couldn't. It looks just like the sidewalk. The drop deceives you . . . it is not visible until it is too late. It was not visible."

It is well settled that, in the absence of notice or knowledge to the contrary, a pedestrian making normal use of the public sidewalk has a right to assume that it is in reasonably safe condition, and while he must use ordinary care for his personal safety and make reasonable use of his faculties to avoid injury to himself, he is not required to keep his eyes fixed on the ground or to be on a constant lookout for danger. (*Meindersee* v. *Meyers,* 188 Cal. 498, 503-504 [205 P. 1078]; *Perkins* v. *Sunset Tel. & Tel. Co.,* 155 Cal. 712, 722 [103 P. 190]; *Barry* v. *Terkildsen,* 72 Cal. 254, 256 [13 P. 657, 1 Am.St.Rep. 55]; *Sykes* v. *City of Los Angeles, supra,* 110 Cal.App.2d 57, 60-61 [241 P.2d 1004]; *Owen* v. *City of Los Angeles,* 82 Cal.App.2d 933, 939-940 [187 P.2d 860]; *Lay* v. *Pacific Perforating Co.,* 62 Cal.App.2d 233, 237 [144 P.2d

395] ; *Scholz* v. *Hilbert,* 30 Cal.App.2d 228, 231 [85 P.2d 902] ; *City of San Diego* v. *Perry, supra,* 124 F.2d 629, 631-632 ; *Berland* v. *City of Hailey,* 61 Idaho 333 [101 P.2d 17, 19] ; *Little* v. *Kansas City,* 239 Mo.App. 1007 [197 S.W.2d 1005, 1006-1008] ; see cases collected in 19 McQuillin, Municipal Corporations [1950], §§ 54.122-54.123.) ▓ Even if a defect is one which might be visible to a person who is looking for such a condition, it does not follow that a pedestrian is guilty of negligence as a matter of law in failing to see and avoid it. (*Sykes* v. *City of Los Angeles, supra,* 110 Cal.App.2d 57, 60-61; see cases collected in 19 McQuillin, Municipal Corporations [1950] at pp. 458-459.) ▓ Whether plaintiff made reasonable use of her faculties and whether she should have observed the condition which caused her injury were questions of fact. (*Eastlick* v. *City of Los Angeles,* 29 Cal.2d 661, 674 [177 P.2d 558, 170 A.L.R. 225] ; *Sykes* v. *City of Los Angeles, supra,* 110 Cal.App.2d 57, 60-61; *Owen* v. *City of Los Angeles, supra,* 82 Cal.App.2d 933, 939-940.)

The evidence was clearly sufficient to support a finding that the driveway was dangerous, and it appears that the jury might have returned a verdict in favor of plaintiff against the Duques if it had been properly instructed on the law applicable to the liability of abutting property owners for conditions they create or maintain on the public sidewalk. Accordingly, the judgment in favor of the Duques must be reversed.

### The City's Appeal

The city contends that the judgment against it must be reversed because plaintiff assertedly failed to file a verified claim with the clerk of the board of supervisors, as required by statute. (Stats. 1931, p. 2475; 2 Deering's Gen. Laws, Act 5149 [now Gov. Code, § 53052].) While plaintiff was bedridden in a nursing home following the accident she signed an original and several carbon copies of a claim against the city in the presence of her attorney. The claim contained a separate verification in the usual form, and plaintiff signed it on the original and some of the copies. The attorney then took the original and the copies to a notary public and informed her that he had seen plaintiff sign them, whereupon the notary signed the jurat on the original. The following day the attorney filed the signed and notarized original of the claim with the city controller's office. Immediately thereafter he presented the clerk of the board of supervisors with

two carbon copies of the claim and informed him that he had filed the original with the controller. One of the copies was signed by plaintiff. The clerk of the board stamped the signed claim "Received," returned it to the attorney, and retained the unsigned copy for the files.

The city argues that the claim was not properly verified because not signed and acknowledged in the presence of the notary and that, even if it be assumed that the verification was proper, the requirements of the statute were not satisfied by presenting the original to the city controller and filing an unsigned copy with the board of supervisors.

The claim may be regarded as a "verified" one within the meaning of the statute although plaintiff did not appear before a notary to sign the verification. (*Cf. Germ* v. *City & County of San Francisco,* 99 Cal.App.2d 404 [222 P.2d 122] [involving an identical provision in the city charter].) The object of requiring verification is to hold the claimant responsible for any false statements made in the claim, and, as pointed out in the Germ case, it is no defense to a prosecution for perjury that the person accused of swearing falsely "did not go before, or was not in the presence of, the officer purporting to administer the oath, if such accused caused or procured such officer to certify that the oath had been taken or administered." (*Germ* v. *City & County of San Francisco,* 99 Cal.App.2d 404, 413-414 [222 P.2d 122] ; Pen. Code, § 121; see *People* v. *Darcy,* 59 Cal.App.2d 342 [139 P.2d 118].) It may be inferred from the evidence that plaintiff was aware that she was required to sign the verification under oath, and her attorney caused the notary to certify that plaintiff had sworn to the statement made in the claim. Accordingly, it appears that there has been substantial compliance with the statutory requirement of verification.

Similarly, while plaintiff should have filed the signed original of the claim with the clerk of the board of supervisors, her failure to do so does not defeat her right to recover. The purpose of requiring presentation of a written claim is to give the appropriate municipal body timely notice of the accident and an opportunity to investigate it. Even if it be assumed that filing the claim with the city controller did not of itself meet this purpose, plaintiff also filed a carbon copy with the clerk of the board of supervisors and notified him that the original had been filed with the controller's office, and both the original and the copy reached the city attorney's office within the time prescribed by the statute for filing claims.

Under the circumstances we are satisfied that there has been substantial compliance with the claim statute.

We come next to the question of the sufficiency of the evidence to support the finding that the city was negligent. The Public Liability Act of 1923, which defines municipal liability for the condition of the public streets, provides that a city shall be liable for injuries resulting from a dangerous or defective condition where it has notice or knowledge of the condition and fails to remedy it within a reasonable time. (Stats. 1923, p. 675, 2 Deering's Gen. Laws, Act 5619 [now Gov. Code, §§ 53050-53051].) ▆ An element essential to recovery under this statute is proof that the municipality had actual or constructive notice of the existence of a dangerous condition. (*Barrett* v. *City of Claremont, ante,* pp. 70, 72 [256 P.2d 977]; *Laurenzi* v. *Vranizan,* 25 Cal.2d 806, 812 [155 P.2d 633]; *Nicholson* v. *City of Los Angeles,* 5 Cal.2d 361, 363 [54 P.2d 725].) ▆ While there is no evidence of actual notice in the present case, it is well settled that the city will be charged with constructive notice of substantial defects in the public sidewalk which have existed for such a length of time and are of such a conspicuous character that a reasonable inspection would have disclosed them. (*Laurenzi* v. *Vranizan, supra,* 25 Cal.2d at p. 812; see *Barrett* v. *City of Claremont, supra, ante,* at p. 73; *Nicholson* v. *City of Los Angeles, supra,* 5 Cal.2d at pp. 364-367.) ▆ In view of the evidence as to the size and character of the depression in the sidewalk and the number of years it had existed, we cannot say as a matter of law that it was not a dangerous condition or that it was not sufficiently conspicuous to give the city constructive notice.

What we have said with respect to contributory negligence in our discussion of plaintiff's appeal is applicable to the contentions made by the city in that regard. ▆ The implied finding that the dangerous condition was substantial and conspicuous enough to charge the city with constructive notice does not, of course, establish that plaintiff was guilty of negligence as a matter of law in failing to observe the danger. She obviously cannot be held to examine the sidewalk with the same care which would be required of the city in discharging its duty of inspection. (*Idlett* v. *Atlanta,* 123 Ga. 821 [51 S.E. 709, 711]; *Hanson* v. *City of Anamosa,* 177 Iowa 101 [158 N.W. 591, 594].) ▆ A municipality must exercise vigilance in keeping its streets safe and is bound to make reasonable inspections to that end. (*Laurenzi* v. *Vranizan,*

25 Cal.2d 806, 812 [155 P.2d 633]; *Nicholson* v. *City of Los Angeles,* 5 Cal.2d 361, 365 [54 P.2d 725]; *Kirack* v. *City of Eureka,* 69 Cal.App.2d 134, 138 [158 P.2d 270].) To "inspect" is "to look upon, to view closely and critically especially so as to ascertain quality or state, to detect errors, . . . to examine." (Webster's New Internatl. Dict. [2d ed.]; see *O'Hare* v. *Peacock Dairies, Inc.,* 26 Cal.App.2d 345, 353 [79 P.2d 433], and cases collected in "Words and Phrases" [Perm.ed.] vol. 21 at p. 646.) On the other hand, as we have seen, in the absence of knowledge to the contrary, a pedestrian is entitled to assume that a sidewalk is reasonably safe and is not required to be on a constant lookout for defective conditions. As stated in *Hanson* v. *City of Anamosa,* 177 Iowa 101 [158 N.W. 591 at 594], "A pedestrian using the streets is not bound to constitute himself an inspector of walks."

▉ There is no necessary inconsistency in the judgment exonerating the Duques and holding the city liable. The verdict in favor of the landowners does not, as asserted by the city, establish that the sidewalk was safe or that plaintiff was guilty of contributory negligence. To the contrary, the verdict against the city necessarily indicates a finding in plaintiff's favor on those issues and, as we have already pointed out, the judgment in favor of the Duques may have been the result of the erroneous instruction on the law relating to the liability of abutting landowners. It is, of course, true that the liability of both the property owner and the municipality depends upon a determination that the sidewalk was unsafe and that plaintiff was free from contributory negligence, but, beyond that, different elements are necessary to support a judgment against each type of defendant. Before a property owner can be held liable it must appear that the dangerous condition of the walk was created by him or his predecessors in title for the benefit of the private property to serve a use apart from the ordinary use for which sidewalks are designed. (*Sexton* v. *Brooks,* 39 Cal.2d 153, 157 [245 P.2d 496].) On the other hand, as we have seen, the liability of the city depends upon a showing that it had notice of the dangerous condition and failed to remedy it within a reasonable time. (*Barrett* v. *City of Claremont, ante,* pp. 70, 72 [256 P.2d 977].) The duty of the landowner is to use due care not to create or maintain a dangerous condition for the benefit of his property, while that of the city is to use due care to discover and remove defective conditions. (See *City of Tuscaloosa* v. *Fair,* 232

Ala. 129 [167 So. 276, 279, 281].) Thus, the liability of each type of defendant is based upon his individual wrongful act or omission, and it is possible to have a valid verdict exonerating one and holding the other. (See *City of Tuscaloosa* v. *Fair*, 232 Ala. 129 [167 So. 276, 279]; cf. *Fowden* v. *Pacific Coast Steamship Co.*, 149 Cal. 151, 155 [86 P. 178]; see Rest. Torts, § 883, illus. 7.)

The city nevertheless argues that the judgment against it must be reversed because there is no judgment against the Duques. It bases this contention on the theory that, where a sidewalk has been altered by a landowner for the benefit of his property, the liability of the city to pedestrians for dangerous conditions thereby created is dependent upon or derivative from that of the property owner and that, in the absence of a judgment against him, a judgment against the city cannot stand. We do not agree. The city is under a duty to keep sidewalks in safe condition, it is directly liable to pedestrians for failing to correct a dangerous condition of which it had notice, and it is not relieved of its responsibility in this regard merely because the condition was created or maintained by a property owner who might also be liable to pedestrians for injuries resulting therefrom. (*Schaefer* v. *Lenahan*, 63 Cal.App.2d 324, 327 [146 P.2d 929]; *City of Pineville* v. *Lawson*, 225 Ky. 542 [9 S.W.2d 517, 519]; *City of Tuscaloosa* v. *Fair*, 232 Ala. 129 [167 So. 276, 279]; see *Chicago* v. *Robbins*, 67 U.S. 418, 422-423, 425 [17 L.Ed. 298, 302-303] and cases collected in 19 McQuillin, Municipal Corporations [1950], §§ 54.17, 54.19.) With regard to persons who are injured by such a condition, the city and the landowner are joint or concurrent tort feasors; each is directly liable for his own wrong and each may be held liable for the entire damage suffered. (See *Brooks* v. *City of Birmingham*, 239 Ala. 172 [194 So. 525, 527]; *City of Tuscaloosa* v. *Fair*, 232 Ala. 129 [67 So. 276, 279]; *Belcaro Realty Inv. Co.* v. *Norton*, 103 Colo. 485 [87 P.2d 1114, 1117]; *Salt Lake City* v. *Schubach*, 108 Utah 266 [159 P.2d 149, 157-158, 160 A.L.R. 809, 821-822]; cf. *Summers* v. *Tice*, 33 Cal.2d 80, 85-86 [199 P.2d 1, 5 A.L.R.2d 91]; *Adams* v. *White Bus Line*, 184 Cal. 710 [195 P. 389]; *Fowden* v. *Pacific Coast Steamship Co.*, 149 Cal. 151, 157 [86 P. 178]; see Rest. Torts, § 879; Prosser on Torts [1941], p. 330, 1102-1104.)

The city relies on cases from other jurisdictions which characterize the liability of the municipality as "secondary" in situations where a dangerous condition is created or main-

tained by a property owner. (See *Herron* v. *City of Youngs-town,* 136 Ohio St. 190 [24 N.E.2d 708, 711]; *Town of Argos* v. *Harley,* 114 Ind.App. 290 [49 N.E.2d 552, 556].) To the extent that such cases may stand for the proposition that the liability of the city is in some way derivative from that of the landowner, we cannot agree with their reasoning. (See *Brooks* v. *City of Birmingham,* 239 Ala. 172 [194 So. 525, 527-528].) The opinions in those cases, however, recognize that the city has an independent duty to correct dangerous conditions of which it has notice, regardless of who created them, and the term ''secondary'' is not used therein to indicate that the city is merely liable vicariously for the negligence of the landowner. Instead, it appears that the term is used as a means of indicating that, in the jurisdiction where the case arose, a city has a right to be indemnified by a landowner in the event it is compelled to pay damages resulting from a dangerous condition he created or maintained and for which he would be liable to pedestrians. In this regard it may be noted that a number of jurisdictions which adhere to the view that the city and the landowner are joint or concurrent tort feasors make an exception to the general rule against contribution between joint wrongdoers and hold that a municipality has a right to be indemnified by the property owner in such a situation. (*Chicago* v. *Robbins,* 67 U.S. 418, 422-423, 425 [17 L.Ed. 298, 302-303]; *Washington Gaslight Co.* v. *District of Columbia,* 161 U.S. 316 [16 S.Ct. 564, 568, 40 L.Ed. 712]; *Salt Lake City* v. *Schubach,* 108 Utah 266 [159 P.2d 149, 157-158, 160 A.L.R. 809, 821-822]; *City of Tuscaloosa* v. *Fair,* 232 Ala. 129 [167 So. 276, 279]; *Gulf, Mobile & Ohio R. Co.* v. *Arthur Dixon Transfer Co.,* 343 Ill.App. 148 [98 N.E.2d 783, 785]; 19 McQuillin, Municipal Corporations [1950], § 54.19, pp. 91-94; Prosser on Torts [1941], p. 1116; 1 Freeman on Judgments [5th ed.], § 477, p. 980.) We are not presented with the problem whether the city might have a right over against the Duques in the event it pays the judgment and the jury returns a verdict against the property owners on a new trial, and nothing we say here should be taken as indicating our views on that matter. (See, generally, *Adams* v. *White Bus Line,* 184 Cal. 710, 714 [195 P. 389]; *Dow* v. *Sunset Tel. & Tel. Co.,* 162 Cal. 136 [121 P. 379].) Even if such a right to contribution or indemnity were recognized, however, it would not mean, as asserted by the city, that its liability to pedestrians is merely dependent or derivative from that of the landowner and not joint or

direct. ■ As noted above, the rule against contribution between joint tort feasors admits of some exceptions, and a right of indemnification may arise as a result of contract or equitable considerations and is not restricted to situations involving a wholly vicarious liability, such as where a master has paid a judgment for damages resulting from the voluntary act of his servant. (See *Washington Gaslight Co.* v. *District of Columbia*, 161 U.S. 316 [16 S.Ct. 564, 568-569, 40 L.Ed. 712]; *Salt Lake City* v. *Schubach*, 108 Utah 266 [159 P.2d 149, 158-159]; Prosser on Torts [1941], pp. 1114-1117; 1 Freeman on Judgments [5th ed.], § 477, p. 980.)

The judgment against defendant city is supported by the evidence and is entirely proper. ■ Being directly liable to plaintiff for its own negligence, the city is not entitled to a reversal of the judgment against it solely because of error affecting the judgment in favor of its co-defendants. (*Cf. Blackwell* v. *American Film Co., Inc.*, 189 Cal. 689, 698 [209 P. 999]; *Talcott Land Co.* v. *Hershiser*, 184 Cal. 748, 756 [195 P. 653]; see *Fowden* v. *Pacific Coast Steamship Co.*, 149 *Cal.* 151, 155-157 [86 P. 178].)

As to defendant city the judgment is affirmed; as to defendants Duque the judgment is reversed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.