[S. F. No. 1748.   Department Two.—February 11, 1901.]

JOHN HORGAN, Respondent, v. HUGH B. JONES et al., Defendants. MARKET STREET RAILWAY COMPANY and A. E. LIDSTROM, Appellants.

NEGLIGENCE—COLLISION OF ELECTRIC-CAR WITH TRUCK—INJURY TO FOOTMAN—CONCURRING FAULT—JOINT VERDICT—REVIEW UPON APPEAL.— Where the plaintiff, as a foot passenger, was injured as the result of a collision between an electric-car and a truck, and jointly sued the railway company, the motorman, and the owners and driver of the truck for concurring fault, and obtained a joint verdict and judgment, upon an appeal by the railway company and the motorman the only question to be considered is whether the negligence of the motorman directly contributed to the injury; and the contributory negligence of the driver of the truck, as against the railway company, is not a proper subject of inquiry.

ID.—NEGLIGENCE OF MOTORMAN—SUPPORT OF VERDICT.—Where the jury were warranted in finding from the evidence that the motorman, with proper skill and diligence, might have avoided the collision by stopping the car before it occurred, notwithstanding the negligence of the driver of the truck in not looking and listening, and that when the motorman attempted to reverse

the current through his incompetence he failed to do so, but merely loosened the brakes, and let the unchecked car loose upon the truck, the verdict against the motorman and the railway company will not be disturbed upon appeal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

W. H. L. Barnes, for Appellants.

Sullivan & Sullivan, for Plaintiff, Respondent.

Peri E. Allen, and M. B. Kellogg, for Other Defendants not Appealing.

TEMPLE, J.—On the 11th of January, A. D. 1897, the corporate defendant, the railway company, owned and was operating a street railway on Page street, in San Francisco, between Broderick and Devisadero streets. On this block the street is sixty-eight feet nine inches wide, and the sidewalks twelve feet each. From the curb on the southerly side to the nearest rail is eleven feet and four inches. The grade from Broderick street to Devisadero street is twelve and twelve hundredths per cent descending.

At about 3 o'clock P. M. of that day an electric-car was descending from Broderick on the southerly track easterly toward Devisadero street. A four-horse team, hauling a heavy, but unloaded, truck, was descending on the southerly side of the street, having its northerly wheels very near, but not on, the track. It was in advance of the car, but how far when the car left Broderick street the evidence does not show. When the car was about half way to Devisadero, the conductor of the car thought the truck was about fifty feet ahead. From street to street the block is four hundred and twelve and one-half feet. The truck was so situated that it must have been obvious to the motorman that the car could not pass without a collision. A collision did occur, which resulted in a serious injury to plaintiff. The suit is against the owner of the street railway, Lidstrom, the motorman, and against Jones and King,

owners of the truck, and Norman, the driver of the truck. The action is so brought upon the theory that the negligence of all contributed to the injury. The leaders of the team ran down the street and against plaintiff.

At the trial the appellants admitted all the facts necessary to establish the case for the plaintiff, except negligence on the part of such defendants. Of course, it does not matter how negligent the driver of the truck may have been, if there was proof to sustain the verdict to the effect that the motorman was also guilty of negligence, which contributed directly to the injury. In other words, there is no purpose in the inquiry as to whether the driver of the truck was guilty of mere contributory negligence such as would have prevented him from recovering damages for personal injuries against the railway company. The real contention of the appellants is, that the injury resulted solely from the negligence of the driver of the truck, and that the motorman was not negligent.

The plaintiff, to make out his case, called the defendant Norman, who drove the truck, and the conductor, McCormick. Each of these, in some important respects, made confused or contradictory statements.

Mr. McCormick, the conductor, stated that about one-half way down the block he went forward to turn the switch into Devisadero street, he discovered the truck on the right-hand side, so close that the car could not pass. The motorman rang his bell and put on the brakes, and, when within about twenty-five feet, reversed the current. Still the collision occurred, and the leaders on the team broke loose and ran down Page street. "After the car struck the wheel, it went forward about twenty feet before coming to an actual standstill—right down to the level there. . . . . A car traveling at the usual rate of speed on the grade could be brought to a standstill by applying the brakes and reversing the current, in about fifty feet or so, I should judge. . . . . When I first observed the wagon I should judge it was probably twenty or thirty feet from the car; about twenty feet ahead of the car when I first observed it. The car was then about the middle of the block. When I first observed the lumber wagon it was about twenty feet ahead of the car. I cannot say at what rate of speed the car was

coming down the grade, but it was a slow rate of speed. It was coming down at the usual rate for that grade. . . . . I noticed the motorman apply the brake and reverse the current when the car was about twenty-five or thirty feet from the lumber wagon. After the car struck the wheel the car went about twenty feet down to the level there. He stopped the car at Devisadero street. The collision occurred on Page street, about twenty-five feet from the corner. The car stopped on Devisadero street. After striking the wheel the front of the car went about twenty feet before it came to a full stop. It came to a standstill about the middle of Devisadero street. My best recollection is we stopped right on Devisadero street, and the front of the car was about in the middle of Devisadero street."

On cross-examination the witness testified that the car went slowly down the hill, under the brakes, all the way, and he knew the bell was rung. He said: "I judge the rear end of the truck was about fifty feet or more from the front of the car when he rang the bell for the wagon. He rang quite a while; I cannot say how many times he rang the bell; and he applied the brakes and the current also, and he had to stop ringing the bell first. I was looking at the man driving the team, and at no time, as near as I could judge, did the driver pay any attention to him whatever. I did not see him turn. He kept on going on the right-hand side of the car. He did not seem to pay any attention to the bell, if he heard it; that I don't know. I know the bell was rung. . . . . I should judge the car was going down the grade about two miles an hour, probably more. . . . . There are no other means provided for checking the speed of the car, except the brake and reversing the current. I saw him use both of these."

Here the witness repeats three times over that the wagon was about fifty feet ahead of the car when he first saw it, about half way down the grade, and the bell was then ringing. Also that he saw the motorman reverse the current and release the brakes when about twenty-five feet from the wagon. The track was dry on that day, and a reversed current might have stopped the car in thirty feet. Again, he said the driver did not seem to hear the bell; acted as though he did not hear it.

The witness did not hear the noise of the wagon. The car made no particular noise. The motorman did all he could to stop the car. The motorman had never been on a car with him before. Did not know he was a green hand. Knew that he had been longer than a week in the employ of the company.

Upon being recalled he stated, among other matters: "When I first went to the front the car was, maybe, one hundred feet from the wagon, and he was ringing the bell then. I should judge he rang it all of the way down to within thirty feet of the wagon. He rang the bell a distance probably of seventy feet."

The witness was preparing to step out to turn the switch when the collision occurred. The switch is about twenty feet from Devisadero street, and the grade is as heavy there as upon any part of the hill. The car generally stops without reversing the current, so that had there been no danger of a collision the motorman should have been preparing for a stop. The result demonstrated that there was no unusual slackening of the car, but the contrary. Instead of making the usual stop it carried the heavy truck, overcoming the resistance of the horses as well, more than thirty feet over the level ground on Devisadero street. Instead of carrying the wagon twenty feet, as stated by McCormick, it must have gone more than sixty feet, and was only stopped after leaving the grade. The jury were justified in believing, as I certainly do from the evidence, that the car was not slackened at all by the attempt to reverse the current, but to the contrary that the motorman lost control of the car, and it was precipitated unchecked by any brakes upon the truck. In other words, there was gross negligence, or utter incapacity, probably the latter, on the part of the motorman. Norman, the truck driver, testified that his horses were walking at the rate of from three to four miles per hour. The conductor saw the wagon when the car was about one-half way down the hill, at which time he says the wagon was about fifty feet ahead, and the collision occurred about twenty-five feet above Devisadero. The speed must have been sufficient to overtake the wagon while the latter was going one hundred and thirty feet, more than six miles per hour. Norman and Zoberbier, the only other witness, agree that the

collision occurred when the wagon was about two-thirds of the way down the hill. If this be true the wagon must have been pushed more than one hundred feet, and the speed must have been much greater than six miles per hour.

Norman also testified most positively that the bell was not rung at all; that he would surely have heard it if it had been rung, and could easily have avoided the collision had he been notified of the approach of the car in the usual mode. The preponderance of evidence is decidedly in favor of the proposition that the bell was rung—but surely there was evidence before the jury which they were at liberty to adopt to the effect that it was not.

On the whole, it seems clear that the verdict and judgment against the appellants are fully sustained by the evidence.

The owners of the truck and the driver have not appealed, and if it be admitted that Norman was also guilty of negligence, such admission would not affect the case of the appellants. We need not discuss, therefore, the question as to how the failure of the truck driver to look back or to listen would affect his rights as against the railway company. That the position of the truck and the conduct of the driver could affect the liability of the appellants is urged, upon the proposition that the motorman had a right to assume that the driver would get out of the way and not obstruct the track. It is evident from the testimony of the conductor that before the motorman attempted to reverse the current the driver was not heeding the signals, if made, and, as already stated, the jury were warranted in finding that when the motorman attempted to reverse the current, through his incompetence he failed to do so, but merely loosened the brakes and let the unchecked car loose upon the wagon.

Appellants complain of the modification of an instruction asked by them. The modification did not in a respect material in this case change the meaning of the instruction. The instruction as given was fully as favorable to appellants as they were entitled to have given.

The judgment and order are affirmed.

McFarland, J., and Henshaw, J., concurred.