[L. A. No. 7008. In Bank.—October 10, 1922.]

RACHEL E. BLACKWELL, Administratrix, etc., Plaintiff and Respondent, v. AMERICAN FILM COMPANY, INCORPORATED (a Corporation), Defendant and Appellant; UNITED STATES (a Corporation), Defendant and Respondent.

[1] Negligence — Recovery for Personal Injuries — Subsequent Death—Right of Widow.—The fact that a person during his lifetime recovered damages for personal injuries does not, in itself, prevent his widow from recovering, as an heir or personal representative, the damages sustained by her from his death resulting from such injuries.

[2] Id.—Action for Death—Proximate Cause—Evidence.—In this action for the death of the plaintiff's husband following an operation performed to correct his crippled condition resulting from injuries received in a collision which were not of a fatal nature, it cannot be said, from the evidence as a whole, that the jury could not have found the accident was the proximate cause of death.

[3] Id.—Intervening Cause—Insufficiency of Evidence.—Where a person injured in a collision died from the effects of a shock attendant upon an operation performed to correct a crippled condition resulting from the injury, and the deceased was under the care of physicians and was receiving medical attention from the time of the accident until his death, and there was no evidence tending to show that the physicians were not competent or that the deceased was negligent in employing them, the operation can-

189 Cal.—44

not be held to be a new or intervening cause relieving the negligent party from liability for the original injury.

[4] ID.—ACTION FOR DEATH—JUDGMENT RECOVERED DURING LIFETIME —IMMATERIALITY.—The fact that an injured person alleged in his action for damages that his injuries were permanent and recovered on that basis, is immaterial in an action by his widow for his death following an operation performed to correct his crippled condition resulting from such injuries, since her recovery is for the pecuniary loss suffered by her by reason of the loss of her husband in his crippled condition.

[5] ID.—COLLISION OF AUTOMOBILES—OPERATION ON WRONG SIDE OF HIGHWAY—EVIDENCE.—In this action against the respective owners of an automobile stage and of an automobile to recover for the death of a stage passenger following an operation for injuries received in a collision between such vehicles, the evidence is sufficient to justify the implied finding that the appellant's automobile was being operated on the left side of the highway, which constituted negligence *per se*.

[6] ID.—JOINT DEFENDANTS—EXONERATION OF ONE—EFFECT OF.—The owner of the automobile cannot on appeal from the judgment in such action raise the point of the insufficiency of the evidence to justify the implied finding that the stage was not being operated at an excessive rate of speed, for if both defendants were negligent and their negligence contributed to the death, they are both jointly and severally liable.

[7] ID.—EXERCISE OF DUE CARE—PRESUMPTION.—The implied finding in such action that the deceased exercised ordinary care for his own protection was warranted in view of the presumption of due care arising from the absence of evidence as to his conduct, although there was no evidence that he protested to the driver of the stage concerning the manner of its operation or that he offered to leave it.

[8] ID.—EVIDENCE—CONCLUSION OF WITNESS—LACK OF PREJUDICE.— The refusal in such action to strike out the conclusion of the plaintiff that there was no union of the bone in decedent's leg was not prejudicial, where such fact was clear from the evidence.

[9] ID.—STATEMENT OF PHYSICIAN—TESTIMONY OF WIFE.—In such action, testimony of the wife that her husband's physician told him to have the operation performed was admissible to show that in receiving treatment he was following instructions, and was not obnoxious to the hearsay rule.

5.  Driving on the wrong side as negligence or evidence of negligence, note, 41 L. R. A. (N. S.) 333.

[10] ID.—EARNING CAPACITY OF DECEASED—EVIDENCE—ABSENCE OF
FINDING.—Where in such action there was no evidence warranting an
implied finding of the husband's earning capacity alleged in the
complaint, the jury in awarding damages cannot be held to have
made such finding, since in assessing damages they were not limited
to the evidence of such earning capacity and it will be presumed
that other elements were considered.

[11] ID.— CONTRIBUTORY NEGLIGENCE— ABSENCE OF EVIDENCE — IN-
STRUCTION.—Where in such action there was no question of con-
tributory negligence under the evidence, it was proper to withdraw
such issue from the jury's consideration.

[12] ID.—NATURE OF OPERATION—INSTRUCTIONS.—An instruction in
such action to the effect that if the deceased used ordinary care
in the selection of a physician and submitted to the treatment
prescribed by him, it would be no defense to show that such
physician failed to give him the best or proper treatment, was
not in conflict with an instruction to the effect that an error of
treatment would not relieve the defendant, but if the physician
made use of the opportunity to perform an unnecessary and
dangerous experiment and the experiment alone resulted fatally,
the defendant would not be liable, since the latter instruction
told the jury that an unnecessary operation would constitute an
independent, intervening act of the physician for which the de-
fendant would not be liable.

[13] ID.—EXPECTANCY OF LIFE—INSTRUCTION.—Where in such action,
the evidence showed that the deceased was only thirty-six years
of age, an instruction that the expectancy of life of a person of
the age of forty-six years is 23.81 years, was not prejudicial but
favorable to the defendant.

[14] ID.—LOSS OF SOCIETY—INSTRUCTION.—In such action, it was
proper to instruct the jury that even if the deceased had been
fully compensated for loss of earning power, they had the right
to consider the pecuniary value of the loss of the comfort, society,
protection, nurture and education which he would probably have
given to the plaintiff and her children.

[15] ID.—MONEY RECOVERED BY DECEASED—ASSET OF ESTATE—IN-
STRUCTION.—Where in such action the defendants maintained that
the recovery in the action brought by the deceased might be shown
in mitigation of damages, an instruction that the money recovered
by deceased did not go directly to his widow and children upon
his death, but was an asset of the estate which had to go through
administration and to pay debts, the balance going to the widow
and children, was a correct statement of the law.

10.   Character and sufficiency of evidence to show pecuniary loss to
the estate of decedent, note, L. R. A. 1918C, 1111.

[16] ID.—VERDICT NOT EXCESSIVE.—The verdict of ten thousand dollars in this case is not disproportionate to the loss sustained by decedent's widow and two minor children nor can it be said to be the result of passion or prejudice.

APPEAL from a judgment of the Superior Court of Los Angeles County. Louis W. Myers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ford & Bodkin for Defendant and Appellant.

E. B. Drake for Plaintiff and Respondent.

LAWLOR, J.—Plaintiff, Rachel E. Blackwell, administratrix of the estate of Edward W. Blackwell, deceased, brought this action against defendants American Film Company, Incorporated, a corporation, and United Stages, a corporation, to recover damages for the death of said Edward W. Blackwell, her husband. The action was tried by a jury, which returned a verdict in favor of plaintiff and defendant United Stages, and against defendant American Film Company, awarding damages against the latter defendant in the sum of ten thousand dollars. Judgment was entered on the verdict, from which defendant American Film Company takes this appeal.

The admitted facts of the case are that on November 27, 1918, the decedent was a passenger in an automobile stage owned by respondent United Stages, and was traveling from Santa Barbara to Los Angeles. At a point between Santa Barbara and Ventura a collision occurred between the stage in which the decedent was riding and an automobile driven by one of appellant's employees, who was traveling from Los Angeles to Santa Barbara. In this collision the decedent was seriously injured. He was first taken to a hospital in Ventura, later removed to one in Los Angeles and finally taken to his home. His leg was broken above the knee and no union of the bone could be effected. An operation was performed in June, 1919, which was unsuccessful. Following this operation decedent was taken home, where he remained for five months, at the end of which time, by the use of a walking splint, he was able to get about on crutches. On January 22, 1920, a second operation was per-

formed to effect a bone transplantation, and a short time after the operation he died. It was alleged in the complaint that the collision was due to the negligence of appellant and respondent United Stages in the operation of their respective automobiles, and that the decedent's death resulted from the injuries he received in the accident.

The decedent during his lifetime commenced an action against appellant and respondent United Stages for damages for his injuries, in which a verdict against appellant was returned in his favor for $13,762. Judgment on the verdict was affirmed on appeal (*Blackwell* v. *American Film Co.,* 48 Cal. App. 681 [192 Pac. 189]), and the said amount, together with interest and costs, was paid to Rachel Blackwell, as administratrix of his estate, the decedent having died between the time judgment was rendered and when it became final.

1. The first contention of appellant is that the evidence is insufficient to justify the verdict. It is insisted in this connection that there is no evidence showing that the death of decedent was proximately caused by injuries received in the collision. Appellant's theory is that the evidence shows that decedent was permanently injured in the collision, for which condition he was fully compensated by appellant; that aside from the injury to his leg he was apparently restored to health and would have lived on indefinitely; that the second operation was not necessary and was not performed to save his life but in the hope of correcting his "stationary crippled condition" for which he had been compensated; that he died from the effects of shock attendant upon the operation and that it would be unjust to say that the decedent would have a legal right to attempt to remedy such a permanent condition at appellant's risk. Respondent Rachel Blackwell's position is that the original fracture of the leg was responsible for decedent's death; that the operation was a necessary and scientific one; that it only contributed to the original injury to produce the decedent's death and that the authorities justify a recovery where the original injury is either the mediate or immediate proximate cause of the death.

[1] The fact that the decedent recovered damages for his injuries would not, in itself, prevent a recovery by respondent Rachel Blackwell, for this view overlooks the

fact that she is suing, not to recover damages for the injuries and consequent suffering and loss to the decedent, but to recover as an heir or personal representative the damages she has sustained by reason of the decedent's death.   (Sec. 377, Code Civ. Proc.; *Earley* v. *Pacific Electric Ry. Co.*, 176 Cal. 79 [L. R. A. 1918A, 997, 167 Pac. 513]; *Redfield* v. *Oakland Consolidated etc. Ry. Co.*, 110 Cal. 277 [42 Pac. 822, 1063]; *Bond* v. *United Railroads*, 159 Cal. 270 [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366]; *Pierce* v. *United Gas etc. Co.*, 161 Cal. 176 [118 Pac. 700].)   The only question presented in this connection is whether it can be said there was no evidence in this case from which the jury might have concluded the accident was the proximate cause of decedent's death.

[2]   The evidence clearly shows, and it is not disputed, that the injuries received by the decedent in the collision were not of a fatal nature.   Dr. Ellis Jones, who performed the operation, the shock of which resulted in decedent's death, stated that at the time of that operation decedent had gained thirty or forty pounds and was apparently in good health; that as far as he knew there was no infection of the injured member; that the operation was performed to correct decedent's crippled condition; that decedent was not in any danger of losing his life from the injury to the leg and that the cause of his death was the shock resulting from the second operation; that decedent "had had a severe injury whereby that caused shock; he had several attempts to reduce that subcutaneously—they all lowered his resistance; he had infection, and then he had another operation, in the operating room, on the day of his death.   Then he had shock, operative shock.   But all these factors, it seems to me, had to be considered as to his ability to resist that operation"; that the first operation was entirely proper; that the second operation was performed to secure a union of the bone and was decided on because otherwise decedent would have been condemned to wear a walking splint and not secure a union of the bone and that the leg could have been amputated.   Respondent Rachel Blackwell testified that decedent had been at home for five months before the second operation; that he had gained thirty or forty pounds in weight and was able to be about on crutches; that Dr. Jensen attended decedent until he was taken to Los Angeles,

where Dr. Jones took charge of the case and attended him. until his death, save for a time that Dr. W. W. Richardson attended him while Dr. Jones was on his vacation. The judgment-roll in the action brought by decedent against appellant and respondent United Stages was admitted in evidence. In the complaint in that action it was alleged the injuries received by decedent were permanent.

[3] It cannot be said, from this evidence as a whole, that the jury could not have found the accident was the proximate cause of decedent's death. According to the evidence we have set out, decedent was under the care of physicians and was receiving medical attention from the time of the accident until his death. The evidence also indicates that the second operation was a step in the continuous treatment administered in an endeavor to cure him of the effect of his injuries. The jury might have found from the evidence that the operation was a proper one under the circumstances—in fact, there are no indications to the contrary. Dr. Jones and Dr. George Piness both testified concerning their training and experience and there was no evidence tending to show that they were not in every way competent or that decedent was negligent in employing them. In such a case the treatment by a physician cannot be held to be a new or intervening cause which would relieve appellant from liability for the original injury. In *Boa* v. *San Francisco-Oakland T. Rys.*, 182 Cal. 93 [187 Pac. 2], the following instruction was held to contain a correct statement of the law on this subject: ''If you find from the evidence that the plaintiff was injured through the negligence of the defendant, that she used ordinary care in the selection of a physician and surgeon for the purpose of treating her said injuries, it will be no defense to show that the physician or surgeon thus selected by her was unskillful or failed to give her the best or proper treatment, providing she complied with the directions and submitted to the treatment prescribed by such physician and surgeon.'' In *Variety Manufacturing Co.* v. *Landaker*, 227 Ill. 22 [81 N. E. 47], a decedent had suffered a broken leg. Several months later his physicians cut the leg open and fastened the ends of the bones together with wire. The operation was unsuccessful and the patient died. In sustaining a verdict allowing damages to decedent's widow, the court said: ''It is next con-

tended that the court erred in giving to the jury appellee's second instruction. That instruction announced to the jury that a person who is suffering from an injury is only required to use reasonable diligence to employ a physician of ordinary skill and experience to treat him, and that the law regards the injury resulting from the mistakes of the physician, or from the failure of the means employed to effect a cure, as a part of the immediate and direct damages flowing from the original injury. The doctrine announced in said instruction is fully sustained by *Pullman Palace Car Co.* v. *Bluhm,* 109 Ill. 20, and *Chicago City Railway Co.* v. *Saxby,* 213 Ill. 274 [104 Am. St. Rep. 218, 68 L. R. A. 164, 72 N. E. 755]." In *Odeneal* v. *State,* 128 Tenn. 60 [157 S. W. 419], it was said: "One who unlawfully inflicts a dangerous wound upon another is held for the consequences flowing from such injury, whether the sequence be direct or through the operation of intermediate agencies dependent upon and arising out of the original cause. One of these dependent occurrences is the necessity of surgical aid, which may eventuate as the immediate cause of death. Surgical aid must be employed, with the attendant risks. Surgeons are not infallible. They are required to have and exercise only reasonable skill, measured by the rules of their art or profession. When the accused inflicts the injury that necessitates the operation, he is held to assume the risk attendant on it. Much is required before the surgeons can be substituted for the defendant."

In view of these authorities it must be held that the implied finding of the jury that the accident was the proximate cause of decedent's death finds ample support in the evidence.

[4] Appellant emphasizes the fact that decedent in his action alleged his injuries were permanent and recovered damages on that basis. Such an allegation is immaterial in the case at bar. The measure of damages in the suit brought by him was based upon his duty to use reasonable efforts to restore his health and earning capacity, and in so far as such reasonable efforts might restore his health and earning capacity they diminished the amount of his recovery in his action against appellant. The verdict and judgment in that action established the fact that he was damaged to the extent fixed by the verdict, and this represents

his decreased earning capacity, injuries, pain and suffering. The jury in this case had the advantage of the verdict of the jury in decedent's action, fixing the amount of his damages, and in determining the loss sustained by respondent by reason of the death of decedent had the opportunity to consider the extent of his incapacity in so far as it was determined by the preceding jury. The question in this case was what pecuniary loss was suffered by respondent and her children by reason of the loss of decedent in his crippled condition.

[5] 2. Appellant's second point is that the evidence is insufficient to justify the implied finding that appellant's automobile was so negligently operated that it collided with the stage in which decedent was riding. However, there was testimony, the weight of which it is not our province to consider, from which the jury could have inferred appellant was guilty of negligence.

L. R. Montana, a passenger in the stage, testified appellant's car "seemed to be coming toward our side of the road, toward the right hand side of the road—that is, their lights . . . From the lights it looked like it was coming towards our car which was being driven on the right hand side of the road at the time. . . . I felt the automobile that I was riding in get off the pavement; that is, I felt a bump or two as the machine got off the pavement. . . . It [the stage] was going about thirty-five or forty miles an hour at the time of the accident; that is as near as I can estimate it." On cross-examination he stated: "The film car seemed to be coming to our side of the road. . . . My memory is that on this occasion our car did pull off the road; that is, the right wheels on the hard dirt."

Herman Eilers, also a passenger in the stage, testified that the stage was being driven to the right of the center of the road, that the right wheels were off the right hand side of the highway at the time of the accident; that the stage had been driving about thirty or thirty-five miles an hour; that he did not know whether or not it had been going forty miles an hour. In view of this evidence it cannot be said the jury could not have found appellant's machine was operated on the left side of the highway, which fact constituted negligence *per se.* (Stats. 1917, pp. 382, 401.)

[6] 3. The next contention of appellant is that the evidence does not justify the implied finding that the stage was not being operated at an excessive rate of speed and that such rate of speed was not the proximate cause of decedent's injuries. This point cannot be raised by appellant. If both defendants were negligent and their negligence contributed to decedent's death, appellant cannot complain that respondent United Stages was exonerated by the jury, for they are both jointly and severally liable. (*Horgan* v. *Jones,* 131 Cal. 521 [63 Pac. 835]; *Benson* v. *Southern Pacific Co.,* 177 Cal. 777 [171 Pac. 948].)

[7] It is also asserted that the implied finding of the jury that decedent exercised ordinary care for his own protection, was not warranted, in that there was no evidence that he had protested to the driver concerning the manner in which he operated the machine or that he had offered to leave it. It was said in *Carpenter* v. *Atchison, Topeka and S. F. Ry. Co.,* 51 Cal. App. 60 [195 Pac. 1073]: "In the absence of evidence to the contrary, the law presumes that he did everything that a reasonably prudent man would have done under the same circumstances for the protection of his own safety. (Code Civ. Proc., sec. 1961; *Crabbe* v. *Mammoth Channel G. Min. Co.,* 168 Cal. 500 [143 Pac. 714]; *Baltimore and Potomac R. Co.* v. *Landrigan,* 191 U. S. 461 [48 L. Ed. 262, 24 Sup. Ct. Rep. 137, see, also, Rose's U. S. Notes].)" Here there was no evidence as to the conduct of decedent and nothing tending to show that, even if his position was unsafe, he did not so consider it and accordingly take steps for his own protection. In view of this fact, together with the presumption arising, such a finding would be proper.

[8] 4. Appellant specifies as error the denial of the court of its motion to strike out an answer, given by respondent Rachel Blackwell while testifying in her own behalf, that there was no union of the bone in decedent's leg, on the ground the answer was a conclusion of the witness. Assuming the ruling to have been erroneous, appellant could not have been prejudiced by it, for it is clear from the evidence that such was the fact. [9] Appellant also specifies as error the overruling of its objection interposed to testimony by respondent Rachel Blackwell that Dr. Jones told decedent to go to the hospital and have the last operation. This

ruling was correct. Decedent had placed himself under the care of a physician and it was proper to show that in receiving treatment he was following instructions given by the physician. In proving this fact, it was competent to admit testimony that certain orders were given. The testimony was not admitted to prove the existence of any fact related by the doctor, but to prove that he made the statement in question. The admission of the testimony under such circumstances is similar to proof that a notice was given and is not obnoxious to the hearsay rule. (See Wigmore on Evidence, vol. III, sec. 1770, and cases there cited.)

[10] 5. An asserted implied finding of the jury to the effect that decedent at the time of the accident was able to earn and was earning three hundred dollars a month is claimed to be erroneous. But we are of the opinion that no such finding may be implied from the verdict. It was alleged in the complaint that decedent's earning capacity was three hundred dollars a month, and this allegation was denied by the answer. No evidence was introduced on this issue. The complaint in the judgment-roll in *Blackwell* v. *American Film Co., supra,* contained an allegation to the effect that his earning capacity was the amount stated. This could not be regarded as evidence of the fact, for the effect of that judgment-roll was expressly limited by an instruction to a consideration of any damages allowed in that action for decedent's loss of time from his business and impairment of his earning capacity. It is well settled that all facts necessary to support the judgment and supported by the evidence will be presumed to have been found to exist. There being no evidence on this point, a finding in favor of the allegation of the complaint would be unwarranted and would tend to defeat the judgment. The jury cannot be held to have made any such finding. In assessing respondent's damages they were not limited to evidence of decedent's earning capacity, for, as was said in *Skelton* v. *Pacific Lumber Company,* 140 Cal. 507 [74 Pac. 13], ''The proof of the value of the deceased as a wage earner might not alone justify the amount awarded; but there were other elements of damage to be considered by the jury, which they alone were competent to consider.''

[11] 6. Fourteen asserted errors are specified with reference to the instructions given to the jury and those re-

fused. The first was one proposed by respondent Rachel Blackwell to the effect that there was no question of contributory negligence under the evidence. Inasmuch as there was no such evidence, as already pointed out, it was proper for the court to withdraw this issue from the jury's consideration.

[12] It is insisted an instruction to the effect that if decedent used ordinary care in the selection of a physician and submitted to the treatment prescribed by him, it would be no defense to show that such physician failed to give him the best or proper treatment, conflicted with one to the effect that an error of treatment would not relieve the defendant, but if the physician made use of the opportunity to perform an unnecessary and dangerous experiment on decedent and the experiment alone resulted fatally to decedent, defendant would not be liable. These instructions are not in conflict. The former properly told the jury that mere concurring negligence on the part of the physician would not be a bar to respondent's recovery. The latter told the jury that if the physician stepped out of the proper field of treatment to perform an unnecessary and dangerous operation, as an experiment for his own benefit, it would constitute an independent, intervening act of the physician for which appellant would not be liable.

[13] The jury were instructed that "for a person of 46 years of age the probable expectancy of life is 23.81 years, under the mortality tables." This is a correct instruction for a person of that age, but it is pointed out that the evidence showed decedent was only thirty-six years old and the instruction therefore inapplicable. However that may be, appellant could not have been prejudiced, for even upon this theory the instruction was wholly favorable to it.

[14] In another instruction the jury were informed that the only element in the case decedent brought against appellant, and respondent, the United Stages, which could be connected with the case at bar "is damages, if any, that were allowed by the jury in the original case for value of his loss of time from his business up to the time of the original trial, which was in May, 1919, together with any probable future loss therefor, and the impairment of his ability to earn money in the future, and should the jury

believe that the plaintiffs in this case have been fully paid upon that issue, yet it leaves the element of damages for pecuniary value for loss of comfort, society, protection, nurture and education that the deceased would probably have given respectively to the widow and infant children had he lived.'' It is appellant's contention that decedent was fully compensated in the former action for his inability thereafter to give comfort, society, protection, nurture and education to respondent and their children and that in omitting to instruct the jury to that effect the court erred. This position cannot be maintained, for these losses are personal to respondent and her children and they alone may claim damages for them. In view of the fact that the judgment recovered by him was a proximate result of the same accident which resulted in his death, it was proper for the jury to have before them the verdict in decedent's case and to be informed as to the nature and effect of the former judgment. This instruction did not purport to deal fully with the question of damages, but merely to inform the jury that even if the plaintiff in that case had been fully compensated for his loss of earning power, nevertheless the pecuniary value of his society, comfort, protection, nurture and education could be recovered by the respondent, and the value of such benefits was left to the jury to determine.

The instruction is also claimed to be erroneous in stating that decedent would probably have given comfort, society, protection, nurture and education to respondent Rachel Blackwell and her children. Whether or not he would have done so, it is asserted, was a question for the jury. But in another instruction the jury were told that it was left to their judgment to say, ''from a consideration of all the facts and evidence of the case, what amount is a just compensation for the financial loss which will probably be directly and proximately caused to the plaintiff by the death of said Edward W. Blackwell, deceased. This pecuniary loss may be . . . a loss arising from a deprivation of benefits which, from all the circumstances of the case, it could be reasonably expected the plaintiff would have received from the deceased Edward W. Blackwell, had his life not been taken. . . . The damages, if any, which plaintiff may recover, are to be based by you, solely on the reasonable expectation of pecuniary advantage to the

plaintiffs from the continuance of the life of the deceased Edward W. Blackwell.'' This instruction in effect informed the jury that they should consider what comfort, society, protection, nurture and education the decedent would probably have given respondent and their children had he lived. In view of this instruction, it is not likely that the jury understood the one under review to mean other than that respondent Rachel Blackwell was entitled to compensation for the loss of such comfort, society, protection, nurture and education as the decedent would probably have given, and the evidence would justify the inference that he would probably have given them in so far as he was able.

[15] Appellant asserts the court erred in giving an instruction that the money recovered by decedent did not go directly to his widow and children upon his death, but was an asset of the estate which had to go through administration and to pay the debts of the estate, the balance going to the widow and children. This is a correct statement of the law. Appellant maintained that the recovery in the action brought by decedent might be shown in mitigation of respondent Rachel Blackwell's damages in the case at bar, and with that evidence before the court it was proper to explain what benefit was derived by the widow and children therefrom.

The court refused to give two instructions requested by appellant, both to the effect that if the jury found for the plaintiff, in estimating the amount of damages she was entitled to recover, they could consider the physical condition of decedent immediately prior to his last operation, in determining the probable amount of financial assistance he would have rendered to his widow and children. It is a sufficient answer to this specification of error that a third instruction of substantially similar import was given to the jury at appellant's request. Respondent disputes the soundness of these three instructions. But, as already pointed out, decedent was fully compensated for the injuries sustained by him and for his resulting physical incapacity and in estimating the pecuniary loss resulting to respondent Rachel Blackwell by virtue of his death it was necessary to take into consideration his crippled condition.

The other instructions given by the court which appellant complains of were either correct in themselves or supplemented by others, or the errors were so unimportant that the jury could not have been misled thereby. The instructions which the court declined to give at appellant's request were properly refused, some being erroneous and the rest being substantially contained in those which were given. The errors assigned in this connection do not merit further consideration.

[16]  7. Appellant's last point is that the verdict of $10,000 is so excessive as to justify a reversal, and that the court erred in refusing to grant a new trial on that ground. But as was declared in *Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237 [116 Pac. 513], "It is by this court said to be the correct rule, 'that it is only where the verdict is so grossly disproportionate to any reasonable limit of compensation warranted by the facts, as to shock the sense of justice, and raise at once a strong presumption that it is based on prejudice or passion rather than sober judgment, that the judge is at liberty to interpose his judgment as against that of the jury.' (*Harrison* v. *Sutter St. Ry. Co.*, 116 Cal. 156 [74 Pac. 1019].)" Considering all the circumstances of the case, we cannot hold that the sum of ten thousand dollars is disproportionate to the loss sustained by decedent's widow and two minor children or that the verdict was the result of passion or prejudice.

Judgment affirmed.

Wilbur, J., Lennon, J., Waste, J., and Richards, J., *pro tem.*, concurred.

Rehearing denied.

All the Justices present concurred.

Richards, J., *pro tem.*, was acting.