## NICK BOMBARD, Inc., v. PROCTOR.

### No. 354.

Municipal Court of Appeals for the District of Columbia.

April 17, 1946.

Carl A. Marshall, of Washington, D. C., for appellant.

Milford F. Schwartz, of Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD, and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellee sued appellant for three times an alleged overcharge on the sale of a used automobile. The OPA maximum price for this automobile unwarranted [1] on the date of the sale was $490. The maximum price for the car warranted was $610, a difference of $120. Appellant sold at the higher price. The trial court, sitting without a jury, made a general finding in favor of appellee for three times the difference, plus a $50 attorney's fee and costs. Defendant in the trial court has appealed.

The sale in controversy was made July 24, 1944. OPA Regulation MPR 540, Amendment 1, invoked here, was dated July 10, 1944, effective the same date, and was published in the Federal Register July 13, 1944. It specified the conditions under which warranted used cars could be sold at a price higher than the maximum for those not warranted. One of the conditions was that such cars must be sold by a "dealer" as defined by the regulation. Section 15(b) defined a dealer as follows:

"(b) 'Dealer' means a person engaged, in whole or in part, in the business of buying, selling, repairing and reconditioning used cars and who maintains a place of business for the display, sale, repairing and reconditioning of such cars. A person who cannot qualify as a dealer because he does not maintain a place for repairing and reconditioning may be approved in writing as a dealer under this regulation by the Office of Price Administration regional office for the region in which his place of business is located, or a district office in that region authorized by such regional office, if he provides adequate evidence to that office that he has established, and is in a financial position to maintain, a working arrangement with a reputable business engaged in the repairing and reconditioning of used cars."

The obvious reason the Office of Price Administration permitted used car dealers having repair facilities to issue the warranty and charge the higher price is shown by the terms of the form of warranty prescribed by OPA regulations and used in this case. After providing that the used car sold was warranted to be in good operating condition, and to remain in such condition under normal use and service for a period of 30 days after delivery, or 1000 miles, whichever may first occur, the warranty continued: "We agree if said vehicle is delivered during the above period to our place of business, to make with reasonable promptness any repairs or replacements which may be necessary to its good operating condition in accordance with normal use and service, at a cost to the purchaser named below of not more than 50% of the normal charge for such repairs and replacements. Our normal charge is not in excess of OPA ceilings."

Appellant did give the approved warranty, and the undisputed evidence at the trial was that at the time of the sale it had established arrangements which later qualified it to become an "approved" warranted used car dealer under the regulation. Appellant did not, however, itself operate facilities for repairing and reconditioning used cars; it had not then been approved in writing or otherwise as such a dealer by the OPA and had not furnished evidence to that office that it had established and was in a financial position to maintain a working agreement with a reputable business engaged in the repairing and reconditioning of used cars.

The first question presented on this appeal is whether under the OPA regulation appellant was a "dealer" authorized to sell warranted used cars at the higher price authorized for such dealers. It urges that it was such a dealer and bases its contention on two principal grounds. The first is that it "maintained" a place of business for repairing and reconditioning used cars within the meaning of Section 15(b) quoted above. "Maintain," it argues, means the same as "provided for." This position, we believe, can not be sustained. The paragraph must be read as a whole, and when so read it is clear that here "maintains" means operates a repair shop itself as a part of its own business. Admittedly, appellant itself ceased keeping such a shop at its place of business in 1942, and, thereafter, up to and including the date of this sale its only means of repairing and reconditioning used cars was through an arrangement with another concern, separately owned and operated, located about a block away. We conclude, therefore, that appellant was not such a "dealer" as defined by the first sentence of Section 15(b) of the regulation.

---

[1] The terms of the warranty are given below.

Appellant next contends that as construed by the OPA no affirmative action on its part was required in 1944 to show that it had made arrangements for having repair and reconditioning work done outside of its place of business. In support of this position it relies upon the following circumstances: Paragraph 1305.73 of OPA Licensing Order No. 1, dated September 27, 1943, provided that: "A license to make sales under price control is automatically granted to all persons who now or hereafter make such sales." Section 14 of MPR 540, Amendment 1, dated July 10, 1944, provided that: "The provisions of Licensing Order No. 1, licensing all persons who make sales under price control, are applicable to all sellers subject to this regulation." The evidence shows further, argues appellant, that an OPA inspector visited its business premises in July 1944, found no repair shop there but made no inquiry as to whether arrangements had been made for making repairs elsewhere, that the inspector addressed a letter on the subject to appellant at an incorrect address and did nothing further when such letter was returned to OPA because of this error. No notice that appellant was not on the list of approved warranted used car dealers maintained at the OPA office was sent to appellant. Furthermore, the OPA for the first time in 1945 amended the definition of a "dealer" contained in Section 15(b) of the regulations to require written applications for authorizations to act as warranted used car dealers and for the first time provided specifically that dealers who had not been approved could not sell used vehicles at warranty prices.

The regulations issued in 1945 with respect to dealers authorized to sell warranted used cars at the higher prices undoubtedly were clearer than those issued July 10, 1944. It remains true, however, that the regulation in effect when this car was sold defined a dealer as one maintaining a place of business not only for the display and sale of used cars but for the repairing and reconditioning of them as well, and further that one who could not qualify under that definition had to be "approved in writing" after providing adequate evidence to the OPA office with respect to arrangements with another shop for repair work.

Appellant met neither condition. We conclude, therefore, that it was not such a dealer as was authorized to charge the higher price. It follows that the price it did charge exceeded the allowable maximum.

Our view is the same as that taken by the United States District Court for the Western District of Virginia, July 17, 1945, in Bowles v. Guilliams, 65 F.Supp. 424. The facts of that case were practically identical with those involved here. In a memorandum opinion, the trial judge in that case said:

"If a person dealing in used cars has no repair shop of his own, he is not a 'dealer' as defined in the Regulation unless and until he enters into an arrangement with a repair shop and obtains the approval of such arrangement from the O.P.A. Conceding that the defendant has done everything except obtain the approval of the O.P.A., I am satisfied that he is not entitled to be considered as a 'dealer.'"

Appellant next urges that the trial court in any event erred in awarding three times the overcharge, because, it claims, the action was not brought under the amendment enacted June 30, 1944, to the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 925(e); that such amendment was not called to the attention of the trial court by either counsel and not considered by the court. Under this amendment, the seller's liability is only the amount of the overcharge or $25, whichever is greater, provided he "proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation." Since arguments of counsel before the trial court are not included in the record, since no answer was required or filed,[2] and since the finding of the trial court was a general one, we have no way of knowing whether it considered the amendment. We note, however, that included in the evidence received at the trial was a letter dated August 26, 1944, about a month after the violation, from D. C. Ration Board 42 to appellee, with a copy to appellant, regarding this particular overcharge and stating among other things that should suit be brought, the court could award a maximum of three times the overcharge or $50,

---

[2] Rule 2 of the Municipal Court for the District of Columbia provides that when the amount claimed exceeds the jurisdiction of the Small Claims Branch but is not more than $500, the action shall be a Class "B" action; Rule 2 governing Class "B" actions provides that no answer or other pleading, generally, is required.

whichever is greater, "unless the seller proves he did not violate willfully" the price regulations; otherwise a minimum of the amount of the overcharge or $25, whichever is greater. The effect of the amendment, therefore, was before the trial court.

Furthermore, the amendment was approved June 30, 1944, this alleged overcharge was made July 24, 1944, the complaint in this suit was filed May 3, 1945, and the trial was had June 21, 1945, nearly a year after the effective date of the amendment. Under these circumstances, there is no reason to assume that the trial court did not consider the amendment.

■ Closely related to the point just mentioned is appellant's contention that the trial court erred in rejecting as evidence a copy of Washington Automotive Trade Association Bulletin No. 438, dated July 5, 1944, which it had received as a subscriber, and which advised the members of the association, including appellant, "that every dealer member of the association by virtue of being a new car dealer, would qualify under the OPA regulation to become effective July 10, 1944."

We conclude that this evidence should have been admitted. According to the statement of proceedings and evidence, the document was identified and offered in evidence "in order to show diligence and good faith" on the part of appellant. Good faith was not a valid defense in a suit for recovery of three times an overcharge prior to the adoption of the June 30, 1944, amendment;[3] this overcharge, however, was made after the adoption of the amendment and the trial was held long after that date. By the terms of the amendment, only the amount of the overcharge or $25, whichever is greater, could be recovered from the seller provided he "proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation."

"The word 'wilful' means knowingly and deliberately. It does not mean that such violations were with evil intent or purpose, but rather denotes conduct which is intentionally knowing or voluntary as distinguished from accidental. * * * The wording of the statute places the burden on the defendant to prove not only that the violation was not wilful but also that it was not the result of failure to take practicable precautions against the occurrence of the violation." [4]

■■ The knowledge or lack of knowledge of whether appellant at the time of this sale was qualified to act as a "dealer" and thus sell at the higher price and whether appellant failed to take proper precautions against the occurrence of the violation were, or should have been, material issues at the trial. The rejected evidence, coming from a trade association of which appellant was a member, informed it that "every dealer member of the association by virtue of being a new car dealer, would qualify under the OPA regulation to become effective July 10, 1944." The issue with respect to the admission of this evidence was not whether the representation made was true or false, but as to the contents of the representation and whether appellant received it. The evidence was material, therefore, as bearing on the state of mind of appellant's president, Nick Bombard. "Where the question is, whether a party has acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence and not mere hearsay." [5] "Wherever an utterance is offered to evidence the state of mind which ensued in another person in consequence of the utterance, it is obvious that no assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the Hearsay rule is concerned." [6]

Since the evidence directly affected the amount which appellee was entitled to recover, its rejection requires the judgment to be set aside and a new trial ordered.

Reversed.

[3] Thierry v. Gilbert, 1 Cir., 147 F.2d 603; Bowles v. American Stores, 78 U.S. App.D.C. 238, 139 F.2d 377, certiorari denied 322 U.S. 730, 64 S.Ct. 947, 88 L. Ed. 1565; Brown v. Cummins Distilleries Corporation, D.C.W.D.Ky., 53 F.Supp. 659.

[4] Bowles v. Batson, D.C.W.D.S.C., 61 F.Supp. 839, 844.

[5] Friend v. Hamill, 34 Md. 298, 308; 6 Wigmore, Evidence, 3d Ed. 1940, § 1789.

[6] 6 Wigmore, Evidence, 3d Ed. 1940, § 1789; accord, Hobart v. Hobart Estate Co., Cal.Sup., 159 P.2d 958, 975; Blackwell v. American Film Co., Inc., 189 Cal. 689, 209 P. 999; Commercial Bank & Trust Co. v. Beach, 66 Colo. 226, 180 P. 982; Smith v. Whittier, 95 Cal. 279, 30 P. 529; Jones, Evidence, 2d Ed. 1908, § 300.