### GUARANTY DEVELOPMENT CO. v. CIRCLE PAVING CO.

### No. 1074.

Municipal Court of Appeals for the District of Columbia.

Argued July 23, 1951.

Decided Aug. 14, 1951.

W. C. Sullivan, Washington, D. C., for appellant.

Francis J. Kelly, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

Circle Paving Company sued Guaranty Development Company in the Municipal Court for $2759.76 of which $1835 was claimed to be due on a contract for paving eleven driveways on a building project, and the additional sum was for extra work, mainly for eleven rear porches and eleven side stoops. Defendant filed an answer denying that the contract work had been completed and asserting that the extra work was not authorized. Defendant also filed a counterclaim demanding $1500 of plaintiff for the wrongful, deliberate and malicious filing of a notice of mechanic's lien against defendant's property. The issues were tried to a jury which awarded plaintiff the full amount of its claim. This appeal by defendant followed.

Appellant claims the right to have the judgment reversed because the jury which tried the case was drawn from the criminal division of the Municipal Court instead of from the civil division. In connection with his motion for new trial, counsel filed an affidavit setting up that he did not know of that fact until after the trial. Counsel says the jury was not lawfully constituted "and that accordingly the jury which tried the instant case was not a jury at all and its actions were and are null and void." But he advances no real argument to support the contention and cites us to no decision in support thereof. Nor does he point to any statute or rule of court which forbids the Municipal Court to send prospective jurors

from one of its branches to another. We have found an applicable decision in this jurisdiction. Eagles v. United States, 58 App.D.C. 122, 25 F.2d 546. The opinion in that case strikingly demonstrates the lack of substance in appellant's contention. It was a capital case in which the government was required by statute to furnish the accused a list of jurors two days in advance of trial. The list delivered to defendant contained the names of jurors assigned to serve in the criminal division of the trial court, but not of those assigned to serve in the civil division. It was revealed that two members of the criminal panel had been excused, that the panel was exhausted before a jury was selected, and that jurors were then called from the civil branch of the court to complete the jury. The Court of Appeals held that the requirements of the statute were satisfied, pointing out that it was not charged that any member of the selected jury was disqualified. Here as in that case appellant advances no contention as to disqualification or lack of qualification of any individual juror or that any irregularity attended the drawing of the panel. Here there was no statute vesting in the defendant the right to have his jurors selected from any particular branch of the court. Moreover, we think it must be conceded that less strictness should govern in civil cases than in criminal cases involving the death penalty.

■ We understand that the practice has been, since the Municipal and Police Courts were consolidated into one court in 1942, Code 1940, Supp. VII, § 11–751 et seq., to draw jurors in separate groups for the criminal and civil division, the same qualifications governing the selection of both groups. We think this is purely an administrative matter and does not affect the right of the court to assign members of the two groups to serve in either branch of the court. The judges serve in rotation in the various branches of the court and we see no legal obstacle to rotation of juries. In a somewhat similar situation the Supreme Court of Michigan, in an advisory opinion, held that jurors selected for service in one branch of a court were available for service in a separate and newly created division of the court. Attorney General ex rel. Judges of Recorder's Court v. Van Zile, 250 Mich. 448, 230 N.W. 511. We are satisfied that no right of the defendant was invaded and that the trial court was correct in refusing to award a new trial on this ground.

■ Another assigned error deals with the admission of evidence. Stanley B. Ledford, who was employed by plaintiff as superintendent and who was his principal witness at the trial, was attempting to tell something a District inspector required in connection with the job. Defendant objected on the ground that it was hearsay and the objection was overruled. The witness replied that the requirements of the inspector were that some type of reenforcement would have to be used in the sidewalk. The record shows that immediately afterwards, "the witness further stated that he told Mr. Vitale [President of defendant company] that he had been instructed by the inspector that it would be necessary to install wire mesh because of this sewer ditch that had been put in there at sometime shortly before the starting of the work. Mr. Vitale asked the price and witness said thirty-five cents per square yard, and Mr. Vitale said: 'If the D. C. inspector requires it, go ahead and put it in', and witness did so using ninety-nine yards of wire mesh." While at first glance the question seemed to call for a hearsay answer, it is quite plain that the purpose was not merely to establish the conversation between Ledford and the inspector, or that Ledford was telling the truth about it, but to show that the subject matter of the conversation was conveyed to defendant and resulted in defendant authorizing the additional work at an agreed charge. This was entirely proper, and highly relevant, since plaintiff alleged that defendant had authorized the extra work, and defendant denied it. To paraphrase what we said in Nick Bombard, Inc. v. Proctor, D.C.Mun.App., 47 A.2d 405, where the question is whether a party has done a certain thing, the information on which he acted, whether true or false, if material, is original evidence and not hearsay.

■ Earlier the same witness was asked if the work was performed in accordance with the District of Columbia highway specifications. Defendant objected on the ground that plaintiff "must produce the specifications and show what they are." The court overruled the objection, but the record does not disclose that the witness ever answered the question. Hence the ruling did the defendant no harm.

■ But we must now examine a similar ruling, made while another witness was on the stand. A highway inspector was produced as a witness for plaintiff and in the course of his testimony was asked "if he would say that the work which came under his jurisdiction was performed in accordance with the specifications of the D. C. Highway Department." Defendant objected "on the ground that it should be shown what the specifications were and then note the particulars where the work conformed thereto." The court overruled the objection and the witness answered, "It was." We think the ruling was erroneous and that defendant was right in urging that plaintiff should first have shown what the specifications required and then develop by evidence the particulars in which the work conformed to such requirements. The jury was entitled to know what was required by the official records and to weigh against such requirements the testimony of the inspector as to what he observed on the job. Merely giving them a short cut by way of the witness' conclusion was not sufficient.

■ Another assignment of error requires comment because it may arise on the retrial of the case. Frank Vitale, president of defendant company, testified that part of the work was improperly performed and had to be done over, and that for such purpose he engaged a cement worker named Robert Tyler who did the work, and that he paid Tyler two checks totaling $200. He produced the checks indorsed by Tyler and they were received in evidence without objection. Yet in the course of his charge the judge told the jury: "There have been introduced into evidence here two checks payable to one Robert Tyler. There are several principles of law which come into play with regard to these checks or your consideration thereof. If a party has it within its power to produce a witness and that witness is not produced, you are entitled to presume that that witness would testify adversely to the side which failed to call him." We must rule that this was error. In the first place it tended to destroy the probative value of the checks and unfairly to cast doubt on Vitale's testimony that he had paid the $200 to Tyler. If the jury were to be told anything along this line they should have been instructed that when a material witness is peculiarly within the power of a party to produce and is not produced and the failure to produce him is not explained, the jury would be justified in drawing the inference that the testimony of such witness if called would have been unfavorable to the party who failed to call him. Krupsaw v. W. T. Cowan, Inc., D.C.Mun.App., 61 A.2d 624. The charge as given did not meet this test for it took no note of the nature of what Tyler's testimony might be or whether he was peculiarly available to defendant; nor was any mention made as to Vitale's explanation as to his absence.[1] There was nothing whatever in the case to show that Tyler was "peculiarly within the power" of defendant to produce. Indeed Vitale testified that he "does not know where Robert Tyler is now, tried to get him but does not know where he is living," and "doesn't know whether he is in Washington." These facts are quite similar to those in the Krupsaw case, supra, and there we held that the unfavorable inference should not be drawn.

■ Appellant asks us to rule that the trial judge was wrong in dismissing his counterclaim. This was done at the conclusion of all the evidence. It seems to us that the record does not furnish a suf-

---

1. Later, the judge said to counsel that he had prefaced his statement by saying "if you find that a witness is available." But the record does not show that this was done.

ficient basis for determining the question, for we are left too much in the dark as to certain essentials. For instance, plaintiff filed his notice of lien for $924.76, while the suit later filed was for $2759.76, and the record does not disclose the reason for the discrepancy. Again there was no showing as to what, if anything, happened to the lien proceeding after defendant had it released by posting bond,—though plaintiff presumably elected to sue for a money judgment instead of attempting to enforce his lien under Code 1940, § 38-110. Nor can we discover from the record with any clarity what items of damage defendant was claiming for the wrongful filing of the notice of lien. These and other related matters should be developed more fully upon the retrial of the case so that the trial court will be in a more informed position to rule on the sufficiency of the counterclaim.

Other errors are assigned and of these some are without merit and others are not likely to arise on the retrial of the case. Hence we do not discuss them.

Reversed with instructions to award a new trial.